# THE STATE OF IOWA,

## DES MOINES, JUNE TERM, A. D. 1882.

IN THE THIRTY-SIXTH YEAR OF THE STATE.

PRESENT:

HON. WILLIAM H. SEEVERS, CHIEF JUSTICE.
" JAMES G. DAY,
" JAMES H. ROTHROCK,
" JOSEPH M. BECK,   } JUDGES.
" AUSTIN ADAMS,

---

ALLEN v. THE B., C. R. & N. R. Co.

1. **Damages**: PERSONAL INJURIES: EVIDENCE. In an action for personal injuries sustained by a brakeman, while getting off a moving train to turn a switch, witnesses were allowed to testify that it was "in the line of his duty" for a brakeman to get off over the side of the car, while the train was in motion. *Held*, error.

2. ——: ——: ——. Where witnesses for the plaintiff had testified that a certain "cattle chute" was constructed dangerously near the track, the evidence offered by the defendant that persons had frequently ridden past it holding to the side of the car, was proper and should have been received.

3. **Instructions**: CONSIDERED TOGETHER. All the instructions must be read and considered together, and where it is not probable the jury have been mislead by the omission of a certain qualification in one which was explicitly given in others, there was no error.

4. **Railroads**: NEGLIGENCE. Where a railway company erects "cattle chutes" in such close proximity to its track as to endanger the lives of its employes, in the proper operation of its trains, it is negligence. If the "chutes" are constructed so as to be reasonably safe for employes operating trains in a reasonable and prudent manner, the company is not chargeable with negligence.

5. **Instructions**: REFUSAL TO GIVE. Where the doctrine of an instruction asked was fairly presented in one given by the court, the refusal to give it, though proper in itself, was not error.

*Appeal from Des Moines District Court.*

TUESDAY, MARCH, 21.

ACTION to recover damages sustained from personal injuries received by plaintiff while employed as a brakeman upon defendant's railroad, which were caused by negligence of defendant. There was a verdict and judgment for plaintiff. Defendant appeals.

*J. & S. K. Tracy*, for appellant.

*Newman & Blake* and *Dodge & Dodge*, for appellee.

BECK, J.—I. The plaintiff, in the discharge of his duty as a brakeman, was required in the night-time to couple to his train certain cars upon a side track, to be taken or removed by his train. A "cattle chute" was situated near this side track which was passed by the cars under the charge of plaintiff, upon one of which, a coal car, he was at the time, having previously made the coupling. While getting down from the car in order to change a switch, the train being in motion, he was struck by the "cattle chute" and thrown to the ground. A wheel of one of the cars ran over his foot, crushing it so that amputation became necessary. The "cattle chute" was

shown to be from nineteen to twenty-three inches from the passing car.

The issues in the case involve the negligence of the defendant in constructing the "cattle chute" too near the side track, and the want of care of the plaintiff in getting down from the car in such manner that he was struck by the "cattle chute."

Upon these issues the following testimony on the part of plaintiff was introduced, against defendant's objection:

Mr. Partland, a witness for plaintiff, testified in response to the following questions:

" 1. Tell the jury the usual way that brakeman get on and off these coal cars, in proper railroading, in the line of their duty? Ans. There is but one safe way to get on the car; that is to get up by placing the foot on the truck or journal box, and get off the same way. * * * * *

" 2. Now, from your experience as a brakeman, will you please tell the jury if this chute stood fifteen or nineteen inches from the outside edge of the car, whether that was a reasonably safe distance for a brakeman to operate and endeavor to get ready to get off a car in the night-time in the dark? Ans. It is not a safe distance from the track, because it will not permit a man passing between the car and chute."

Turner, a witness for plaintiff, was permitted, against defendant's objection, to testify as follows:

" 1. Tell the jury how a brakeman, in the line of his duty, would prepare to get off a coal car to turn a switch in the night-time? Ans. Get over the side of the car and land on the box-stand, on the journal.

" 2. Is it within the line of duty of a brakeman, who is switching in this way, to wait until the train has run down past the switch and then get off and turn the switch? Ans. No, sir; it is not his duty to do that—to wait until the train stops.

" 3. I will ask you whether it is in the line of duty of a brakeman to get off a car at a switch for the purpose of turning

Allen v. The B., C. R. & N. R. Co.

it while it is in motion? Ans. Yes, sir; it is the duty of a brakeman to work as quick as he can, and to do this he must get on and off the train while it is in motion.

" 4.   Is there any danger to a brakeman in the line of his duty in getting off the side of a coal car, or getting ready to get off the side of a coal car, in the night-time, to turn a switch, on account of a solid body being fifteen or nineteen inches distant from the outer edge of the car? Ans. There is; it is impossible, I should think, for a man's body to pass through a space of that kind, and for that reason there would be danger —all possible danger."

Parker, another witness for plaintiff, was permitted to testify as follows:

" 1.   In going up to the cars, state whether it is within the line of duty of a brakeman to get off the car when it is in motion. Ans. Yes, sir; he should get off the car—be ready to get off at the switch. In preparing to get off, it would be his duty to get over the side of the car.

" 2. Where should he place himself? Ans. In a car of this kind he would have to stand on the journal-box; get over the side and put his foot on the box and his hands on the side; this would be within the line of his duty.

" 3.   How soon should a brakeman prepare to get off his train—jump off a moving train and turn a switch—to be within the line of his duty? Ans. In time to get off at the switch, he would be in the line of his duty if he prepared to go off at once, when the train is operated with steam brakes, and when he only goes ninety-five steps."

Other evidence, to the same effect, was admitted against defendant's objection.

II.   This testimony, in our judgment, is an expression of the opinion of the witnesses, which will plainly appear upon brief consideration. The witnesses declared that

1. DAMAGES: personal injuries: evidence.

certain acts were within the "line of the duty" of the brakeman. While it was competent for the

witnesses to state, as a fact, what services were performed by the brakeman in the discharge of his duty, they ought not to have been permitted to express an opinion that a particular manner of performing such services was required of him in the discharge of his duty.

The duty of a brakeman may be prescribed by rule of the company employing him, or by custom prevailing in the operation of railroads. It pertains to the particular services performed and the purposes to be accomplished. It may require him to couple and uncouple cars, to change switches, to check the speed of the train, etc., etc. It requires him to do these things in a reasonable, careful, and prudent manner, with a view to his own safety as well as the safety of the train. He is required to use the appliances intended for the different work done by him. The discharge of his duties may be performed in different ways. The manner of his performance of duty must be distinguished from the duty itself. Now, a brakeman in the discharge of his duty is required to descend from a car in order to change a switch. The descent may be made in a prudent or in a careless manner. But the brakeman would not be excused for carelessness, on the ground that his duty required him to descend, if the act could have been done in another manner with greater safety.

The expression in the evidence just quoted " in the line of duty," was doubtless used in its correct meaning as synonymous with the words, "in the discharge of duty." The court, in the instructions, used the expression in this sense. The jury understood the witnesses, when they declared an act of the brakeman to be " in the line of duty," to express the opinion that the duty of the brakeman required him to perform the act. The witnesses were thus permitted to express the opinion that the act done by the plaintiff was required in the proper discharge of his duty, and that plaintiff was not chargeable with negligence, because the act was required in the discharge of duty. But it was the province of the jury to determine

whether the act was required of plaintiff in the performance of services imposed upon him, or whether such act could not have been done in another manner, attended with less danger. The witnesses could have explained to the jury the nature of the services rendered by plaintiff when he was injured, the performance of which was imposed upon him by his duty as brakeman, and the usual or customary manner of performing these services, but they ought not to have been permitted to express the opinion as to plaintiff's care or negligence. The fault of the evidence is that the witnesses, by declaring that the particular acts of plaintiff done at the time, that is the manner of the discharge of the services rendered, were required by the duty of plaintiff, thus expressing the opinion from which the inference would be drawn that plaintiff was not chargeable with any negligence. But the question of plaintiff's care or negligence in descending from the car cannot be determined upon the opinion of those familiar with the services in which he was engaged. It is not a proper subject for expert testimony.

These conclusions are in accord with prior decisions of this court. See *Hamilton v. The Des Moines Valley R. Co.*, 36 Iowa, 31; *McKean v. The B., C. R. & N. R. Co.*, 55 Iowa, 192.

III. The defendant offered evidence to show "that persons had frequently ridden on cars, as broad as this one, between the cattle chute and the outside of the car, and that the cattle chute was the same then as it is now." This testimony was then rejected. It ought to have been admitted.

Witnesses for plaintiff had testified that a man could not ride by the chute holding to the side of the car, as indicated in the proposed evidence, and it was declared by more than one witness for plaintiff to be extremely dangerous. The testimony proposed tended to contradict the evidence introduced on this point by plaintiff, and to show that the cattle chute was

not constructed in dangerous proximity to the side-track. These matters were directly involved in the issues in the case.

IV.   Counsel for defendant insist that the ninth and tenth instructions given by the court are erroneous, for the reasons that they recognize the theory of plaintiff's witnesses as to the care exercised by plaintiff, and assume that defendant was negligent.   The instructions direct the jury that if they find plaintiff was swinging to the side of the car, "and this was in the *line of his duty*, or was ordinary care, and not negligence, they should find for the plaintiff."   The question of plaintiff's care was for the jury to determine.   The court was not authorized to say that "swinging to the side of the car," as a matter of law, was negligence. If brakemen have no other ways of reaching the ground than by climbing down the side of the cars, and if they are required to do so when the cars are in motion, they are not, as matter of law, negligent in descending the cars in that manner. They can do so only by "swinging to the side of the car," which, therefore, does not constitute negligence *per se*.

*3. INSTRUC- TIONS: con- sidered to- gether.*

While the instructions now under consideration do not inform the jury that plaintiff cannot recover unless defendant was negligent, yet such directions were explicitly given in other instructions, the third and fourth.   It would have been better had the same thought found expression in these instructions.    But as all the instructions are to be read together, and were so read by the jury, it is hardly probable that they were misled by the omission of the qualification under consideration from the two instructions complained of by counsel.

V.   The defendant, in the third and fifth instructions requested by its counsel, asked the court to instruct the jury that the defendant " had the right to construct its cattle chute in such manner and in such close proximity to the, railroad track as would best subserve its purpose in safely loading and unloading live stock," and that defendant is not, therefore, chargeable with negligence in causing the in-

*4. RAIL- ROADS: neg- ligence.*

jury sustained by plaintiff. These instructions were properly refused. The law requires defendant to exercise thought for the safety of its employes. Its care is not to be exhausted in providing for the safety of the cattle taken upon the train. Human life demands of it consideration.

VI. The fourth instruction asked by defendant presents a correct rule. It is, in substance, that if the chute was con-

5. INSTRUC-     structed so as to be reasonably safe for employes
TIONS: re-
fusal to give.   operating trains in a reasonable, safe, and prudent manner, defendant is not chargeable with negligence on account of the character and condit.on of the chute. The doctrine of this instruction is fairly presented by the seventh, given by the court. Its refusal was not, therefore, erroneous, though it may well have been given.

VII. The instructions given by the court, we think, are correct. No objections thereto are urged in argument except to the ninth and tenth above considered. The instructions asked by defendant, so far as they are correct, are repetitions of those given. For the errors in admitting and excluding evidence above pointed out, the judgment of the District Court is

REVERSED.