IN RE: THE CLAIM OF MILDRED LUNSFORD DUCKETT, WIDOW OF LT. ARTHUR WALTER DUCKETT, FOR PAYMENT OF PENSION BY BOARD OF EXAMINERS OF ASHEVILLE FIREMEN'S PENSION AND DISABILITY FUND.

(Filed 27 September, 1967.)

1. **Retirement Systems § 5—**

The right to a pension depends upon the provisions of the statute providing the benefits and must be determined primarily from the terms of the statute.

2. **Statutes § 5—**

The words of a statute must be given their natural and ordinary meaning, and when the meaning of a statute is plain and unambiguous, the courts must construe the act as written and do not have the power to insert provisions not contained therein or to delete provisions there appearing.

3. **Same—**

Where a statute provides benefits upon conditions joined by the disjunctive "or", one alternative may not be made a part of the other, and a person is entitled to its benefits if he comes within either condition.

4. **Retirement Systems § 5—**

A statute providing benefits if a member of a retirement system should become disabled "while acting in line of his duty" or if he should die as a result of such disability, *held* not to require a causal relation between disability of a member and his work, but only that the disability occur while the member is in the discharge of his duties.

5. **Same—**

The evidence tending to show that a fireman, after helping extinguish a brush fire with a pine branch during the course of some 15 minutes, complained of pain in his chest, and that minutes after returning to the

fire station died of a myocardial infarction, *held* to disclose death from a disability occurring in line of duty, entitling his widow to the benefits provided by the act. Chapter 320, Session Laws of 1955.

**6. Same—**

The determination by a pension board that a member's death or disability was not received in line of duty is a legal conclusion and reviewable, notwithstanding it is denominated a finding of fact.

APPEAL by Board of Examiners from *Martin, S.J.*, 8 May 1967 Session of BUNCOMBE.

Civil action arising from a claim filed by the widow of Lt. Arthur Walter Duckett for an increase of pension benefits. The claim was first heard by the Board of Examiners of Asheville Firemen's Pension and Disability Fund, where evidence was offered substantially as follows:

Mildred Lunsford Duckett stated, in substance, that her husband had worked for the Asheville Fire Department continuously from 1924 or 1925 to the time of his death; her husband was and had been in good health and had given no indication of any heart condition or other serious physical disability.

James R. Peterson testified that he was a fireman employed by the City of Asheville on 7 March 1966. On that day he, Lt. Arthur Walter Duckett, the officer-in-charge, and fireman Ray Rathbone went to a brush fire on Chapel Park Place. Upon arrival, and after giving necessary instructions to the firemen, Lt. Duckett began to beat the fire out with a pine branch. After about fifteen minutes and when the fire was under control, Peterson observed the Lieutenant walk up to and lean on the engine. Lt. Duckett remarked that his chest was hurting and he thought he had indigestion. He told the firemen to hurry back to the Station. Traffic delayed the parking of the engine when they approached the Station about five minutes later, so Lt. Duckett left the engine and walked a distance of about 50 feet into the Station while Peterson and Rathbone parked the engine. Upon entering the Station, Rathbone found Lt. Duckett lying near the bathroom door. An ambulance was called and first aid administered, but in the opinion of Peterson, Lt. Duckett was dead when he was carried away in the ambulance. Peterson said: "There was no indication that he (Duckett) was overcome with smoke or anything of that sort."

The testimony of fireman Rathbone, in essence, corroborated the testimony of fireman Peterson.

The death certificate listed coronary occlusion due to coronary thrombosis as the cause of death.

Dr. Zebulon Weaver, III, admitted as a medical expert, testified that he did not know Lt. Arthur Walter Duckett. In response to a

hypothetical question, he testified that in his opinion the symptoms presented "are rather typical of myocardial infarction, or layman's terms of a heart attack." He also stated, "But, as far as coronary occlusion itself causing the infarction, we do not have any real evidence that the exertion itself will cause the infarction itself." He further testified in generalities as to heart disease.

Thereafter, on 11 October 1966, the Board met and found, *inter alia:*

> "That as the fire-fighting was being concluded Lt. Duckett suffered a heart attack, and which resulted in his death a few minutes later at the Fire Station;
>
> "That said heart attack was not caused and did not result from exertion or exhaustion related directly or indirectly to fire fighting, or line of duty, but rather resulted from some disease or condition or infirmity not caused by his work and duties as a fireman, and his death or disability was not received in line of duty.
>
> .  .  .
>
> "The Board thereupon agreed unanimously that Mrs. Duckett was entitled to receive one-half of the pension, which is the amount which she has been receiving, and that she was not entitled to receive 70% of Lt. Duckett's monthly salary as requested."

The claimant excepted and objected to findings of fact and conclusions set forth in the second and third unnumbered paragraphs set out above. Petitioner further objected to the failure of the Board of Examiners to find the following facts and conclusions therefrom as conforming to the facts, evidence and law in said matter:

> "1.  That Lieutenant Arthur Walter Duckett was an employee of the City Fire Department and had been for several years and had attained the rank of Lieutenant in said Department.
>
> "2.  That Lieutenant Duckett on March 7, 1966, was stationed at Biltmore Fire Station and on said date he was on duty from 7:30 o'clock A.M. to ...................
>
> "3.  That Lieutenant Duckett was in charge of said Fire Station on said date and Fireman Peterson and Rathbone were under his charge and that his line of duties on said date was to assist in and oversee the extermination of fires in that area.
>
> "4.  That about 3:30 o'clock P.M. they were summoned to a fire on Chapel Park Place, 2 or 3 miles from said Station,

and the call was answered by Lt. Duckett and Firemen Peterson and Rathbone using a fire truck for transportation; that said fire was what is known as a brush-fire and Lt. Duckett, after instructing his helpers, got a pine brush about 3 feet long and fought said fire with said pine brush for about 15 minutes and until the same was put under control.

"5. That, immediately after fighting said fire as aforesaid, Lt. Duckett was leaning up against the fire truck and on inquiry by Fireman Rathbone stated that he was sick and expressed a desire to return immediately to said Station.

"6. That when they arrived at the Station Lt. Duckett got out of the truck and went into the Station and in a few minutes he was found lying unconscious near the entrance to the bathroom. He was taken immediately to a hospital, but was pronounced dead upon arrival.

"7. That Lt. Duckett worked regularly and was never off because of sickness; that he had no personal physician and had not needed the services of a physician for years, with two minor exceptions; that he had never suffered from or complained about any heart affliction and his wife, who was his constant companion except when working, had never heard of any heart condition.

"8. From the foregoing facts the Board of Examiners finds that Lt. Duckett became disabled and died while acting in the line of his duties as a member of the Asheville Fire Department.

"9. The Board therefore concludes and finds that under the provisions of Section 7, Chapter 320, of Laws of 1955, that because of said disability while acting in the line of his duties Lt. Duckett would have been entitled to a monthly sum equal to 70% of his monthly salary then paid him by the City of Asheville, and consequently upon his death his widow is entitled to the same sum as long as she remains unmarried."

The claimant petitioned the Superior Court for a writ of *certiorari,* which was allowed. The matter was heard before Judge Martin, who sustained the pertinent objections and exceptions of the petitioner, reversed the order of the Board of Examiners, and ordered the cause remanded to the Board of Examiners for entry of an order awarding the pension in accordance with his judgment. The Board appealed.

*O. E. Starnes, Jr., for appellant Board of Examiners.*
*Don C. Young and Lee, Lee & Cogburn for appellee.*

Branch, J. "The right to a pension depends upon statutory provision therefor, and the existence of such right in particular instances is determinable primarily from the terms of the statute under which the right or privilege is granted." 40 Am. Jur., Pensions, Sec. 23, p. 980.

Chapter 320 of the 1955 Session Laws of North Carolina provides in pertinent part:

"Sec. 7. Payment for Disability in Line of Duty. — That if and in the event any member of the Asheville Fire Department qualifying under this Act shall become disabled while acting in line of his duties, and is unable to work, he shall receive monthly a sum equal to seventy (70%) per cent of his monthly salary as then paid by the City of Asheville, said seventy (70%) per cent of said monthly salary shall be paid in monthly installments by the Custodian of the Firemen's Pension Fund; . . . Provided, further, that if such member of the Asheville Fire Department shall be killed in the line of his duties, or shall die as a result of a disability as defined in this Section, his widow, if he be married, shall receive, so long as she remains unmarried, the same monthly installments as he would have received under this Section."

It is not controverted that deceased died as a result of a disability. Thus, the crucial question is whether there is sufficient, competent, material, substantial evidence to support the Board's finding that decedent was not disabled "while acting in line of his duties." In order to answer this question we must determine the meaning of "while acting in the line of his duties" as used in the statute amending the Act establishing the pension fund for members of the Asheville Fire Department. We are unable to find a North Carolina case which has decisively interpreted the phrase, "while acting in the line of his duties." Neither do we find much help or guidance from the many cases arising under our Workmen's Compensation Act, since there, compensation is only allowed when there is an injury by accident arising out of and in the course of employment. *Wilson v. Mooresville,* 222 N.C. 283, 22 S.E. 2d 907. Thus, without these additional requirements in the controlling statute, we must readily concede that "while acting in line of his duties" as used in the instant case has a much broader meaning than the language used in the Workmen's Compensation Act.

Appellant contends that there must be causation, *i.e.*, the disability or death must be produced by or arise from the employment, and that to hold otherwise would contravene the purpose of the leg-

islature and lead to an absurd result. In support of this contention it cites *In re Hickerson,* 235 N.C. 716, 71 S.E. 2d 129, which holds:

> "In this connection, in *S. v. Barksdale,* 181 N.C. 621, 107 S.E. 505, this Court, in opinion by Hoke, J., stated that parts of the same statute, and dealing with the same subject, are 'to be considered and interpreted as a whole, and in such case it is the accepted principle of statutory construction that every part of the law shall be given effect if this can be done by any fair and reasonable intendment, and it is further and fully established that where a literal interpretation of the language of a statute will lead to absurd results, or contravene the manifest purpose of the Legislature, as otherwise expressed, the reason and purpose of the law shall control and the strict letter thereof shall be disregarded,' . . ."

The case of *Hutchens v. Covert,* 39 Ind. App. 382, 78 N.E. 1061, represents a line of authority which would seem to sustain appellant's position. Here the statute authorized a pension to the widow and children of a policeman on his death, and "while in line of his duty or from natural causes." The court held that a pension under this act was not authorized where a policeman while at his place of duty committed suicide because of insanity without a showing that the insanity was the result of the performance of his duty. This case is factually distinguishable from the instant case, in that in *Hutchens* the deceased died because of self-destruction or his own wrongdoing and while he was not acting in the line of his duty.

In *State, ex Rel. v. Board of Trustees,* 192 Mo. App. 583, 184 S.W. 929, the Missouri Court considered a pension statute which provided, "If any member of such fire department shall, while in the performance of his duty, be killed or die as the result of an injury received in the line of his duty, or of any disease contracted by reason of his occupation as fireman, or shall die from any cause whatever while in such service." Holding that the widow of a fireman who died as a result of being shot during a quarrel in a saloon and at a time when he had been granted a special leave of absence should not recover pension under this act, the court stated: "So that the phrase 'while in such service' is not synonymous with 'while a member of the fire department.' But the word 'service' means the 'same service' referred to in the three preceding clauses, that is to say, a service rendered 'in the line of his duty' or 'by reason of his occupation as a fireman.' The word 'service' as here used means the act of serving, the labor performed or the duties required of a fireman, and is not used to refer to or designate a department of the city's activities." . . .

"And so on throughout the Act, the disability, injury, incapacity, or whatever it is, must arise from, or be connected in some way with, the performance of the duties of a fireman."

The phrase "while in line of duty" was discussed in the case of *Allen v. B., C. R. & N. Ry. Co.*, 57 Iowa 623, 11 N.W. 614, in an action for personal injuries sustained by a brakeman while getting off a moving train at a switch when a witness was allowed to testify that it was "in the line of his duty" for a brakeman to so do while the train was in motion. In pertinent part, the court stated:

"The duty of a brakeman may be prescribed by rule of the company employing him, or by custom prevailing in the operation of railroads. It pertains to the particular services performed and the purposes to be accomplished.

"The expression in the evidence just quoted 'in the line of duty,' was doubtless used in its correct meaning as synonymous with the words 'in the discharge of duty.' The court, in the instructions, used the expression in this sense. The jury understood the witnesses, when they declared an act of the brakeman to be 'in the line of duty,' to express the opinion that the duty of the brakeman required him to perform the act. . . ."

In the case of *Mook v. City of Lincoln*, 146 Neb. 779, 21 N.W. 2d 743, a widow was granted a pension under a statute which provided for a pension in case of the death of a fireman "while in the line of duty, *or* death is caused by or is the result of injuries received while in the line of duty, . . ." The plaintiff's decedent collapsed while on the roof of a building fighting a fire, and died within an hour, the cause of his death being angina pectoris. In this case the defendant contended, as does the defendant here, that in order for the plaintiff to recover she must prove not only that death was in the line of duty, but also that death was the result of the duty and not merely coincident with it. The court, in deciding for the plaintiff, stated:

"' '"* * * where the words of a statute are plain, direct and unambiguous, no interpretation is needed to ascertain their meaning * * *."' ' In the absence of anything to indicate the contrary, words must be given their ordinary meaning. It is not within the province of a court to read a meaning into a statute that is not warranted by the legislative language. Neither is it within the province of a court to read plain, direct, and unambiguous language out of a statute. If possible, the entire statute is to be applied as written. We think this statute meets the test of being plain, direct, and unambiguous."

It is obvious in this case that the court considered "while in line of duty" a plain, direct and unambiguous phrase which required no judicial interpretation. Further, the disjunctive participle "or" is used to indicate a clear alternative. The second alternative is not a part of the first, and its provisions cannot be read into the first.

Recognizing the rule that the words of a statute must be given their natural or ordinary meaning (*Seminary, Inc. v. Wake County,* 251 N.C. 775, 112 S.E. 2d 528), we turn to Webster's Third New International Dictionary for the following definitions:

> Line of duty—"all that is authorized, required, or normally associated with some field of responsibility (as a policeman, fireman, or soldier)—used esp. in connection with assessment of responsibility for or classification of sickness, injury, or death of persons subject to a line of duty. (it is now customary to consider any sickness or injury of a member of an armed service that is suffered while on active duty to have been incurred in the line of duty in the absence of personal fault or neglect or of existence of the condition prior to entry into service)."
>
> While—"a period of time . . . the time during which an action takes place or a condition exists . . . the time marked by the occurrence of an action or a condition."

Thus, we hold that a person is acting "while in the line of duty" when he acts at the time and place he is required to be at work and when he is engaged in the performance of his duties or is engaged in activities incidental to his duties. The term "while in line of duty" is synonymous with "while in the course of employment" or "while in discharge of duty."

The statute before us is clear, positive and understandable, and expresses a sensible meaning.

In order for appellant to prevail, we would have to read into the statute a requirement that there be a causal relation between his disability and his duties. This we cannot do.

> ". . . the court must construe the act as written. The legislature has power to change the law. The Court does not have that power." *Jenkins v. Dept. of Motor Vehicles,* 244 N.C. 560, 565, 94 S.E. 2d 577.

Appellant further contends that the Superior Court is bound by the Pension Board's finding of fact. The finding of fact by the Board that decedent's death or disability was not received in line of duty was in reality a legal conclusion determinative of the parties' rights and as such is reviewable by the Superior Court, although

it was denominated as a finding of fact. *Casualty Co. v. Funderburg,* 264 N.C. 131, 140 S.E. 2d 750; *Warner v. W. & O., Inc.,* 263 N.C. 37, 138 S.E. 2d 782.

There was not sufficient, competent, material substantial evidence to support the Board's conclusion that decedent was not disabled while acting in line of his duties.

Affirmed.