DEEP RIVER FARMS, LTD., A LIMITED PARTNERSHIP V. MARK G. LYNCH, SECRETARY OF REVENUE OF THE STATE OF NORTH CAROLINA

No. 8118SC1087

(Filed 6 July 1982)

Taxation § 31.3— hygroponic growing system —not machine for use tax purposes

> An assembled hygroponic growing system for tomatoes, which resembles a greenhouse, is not a "machine" eligible for a reduced use tax under G.S. 105-164.4(1)(g) where substantial human activity is required within the system in order for tomatoes to be cultivated and harvested.

APPEAL by plaintiff from *Albright, Judge.* Judgment entered 12 August 1981 in Superior Court, GUILFORD County. Heard in the Court of Appeals 26 May 1982.

Plaintiff, a grower of tomatoes by use of hygroponic growing systems purchased from an out-of-state vendor, appeals a judgment determining that he was not entitled to a partial refund of a use tax assessed and paid on 35 of his hygroponic growing systems.

*Haworth, Riggs, Kuhn, Haworth & Miller, by John Haworth, for plaintiff appellant.*

*Attorney General Edmisten, by Special Deputy Attorney General Myron C. Banks, for defendant appellee.*

BECTON, Judge.

The plaintiff is a tomato grower who purchased 35 units of articles from an out-of-state vendor for the purpose of cultivating,

growing, and harvesting tomatoes. The sytems were purchased by plaintiff as total packages for a unit price not broken down for the various component systems. As purchased from the out-of-state vendor, the system was incapable of providing a life system for the tomato. In order for it to operate properly, the system had to be supplemented with a concrete floor, tables, and furnaces. Once fully assembled, the system appeared to be a greenhouse and was called a hygroponic growing system.

The plaintiff paid no sales tax on the units at the time they were purchased. Taxes were paid on the supplies purchased locally. The plaintiff was thereafter taxed for the units at a rate of 3% state use tax and 1% county use tax. The plaintiff filed this action requesting a partial refund of state taxes paid. He maintained that the systems should have been taxed as machines or machinery at 1% of the cost, subject to an $80.00 limit, instead of at the 3% rate. From a decision by defendant denying the refund and a decision by the trial court finding that the package purchased from the out-of-state vendor was not a machine, the plaintiff appeals.

The issue before this Court is whether the hygroponic growing system purchased by plaintiff was a machine or machinery for purposes of G.S. 105-164.4(1)(g).

In construing statutes, it is well established that the ordinary and common meaning is to be given words unless a technical or different meaning is apparent by the context. *In re Duckett*, 271 N.C. 430, 436, 156 S.E. 2d 838, 844 (1967). It is also well established that when a taxing statute provides a lower tax rate than is generally applied, a partial exemption is created. *Yacht Co. v. High, Commissioner of Revenue*, 265 N.C. 653, 656, 144 S.E. 2d 821, 823-24 (1965). Further, the taxpayer claiming an exemption has the burden of showing that he comes within that exception. *Id.*, 144 S.E. 2d at 824.

G.S. 105-164.4 provides:

Imposition of tax; retailer.—There is hereby levied and imposed, in addition to all other taxes of every kind now imposed by law, a privilege or license tax upon every person who engages in the business of selling tangible personal property at retail, . . .

(1) At the rate of three percent (3%) of the sales price of each item or article of tangible personal property when sold at retail in this State. . . .

. . . .

Provided further, the tax shall be only at the rate of one percent (1%) of the sales price, subject to a maximum tax of eighty dollars ($80.00) per article, on the following items:

g. Sales of machines and machinery, whether animal or motor drawn or operated, and parts and accessories for such machines and machinery to farmers for use by them in the planting, cultivating, harvesting or curing of farm crops, and sales of machines and machinery and parts and accessories for such machines and machinery to dairy operators, poultry farmers, egg producers, and livestock farmers for use by them in the production of dairy products, poultry, eggs or livestock.

The term "machines and machinery" as used in this subdivision is defined as follows:

*The term shall include all vehicular implements, designed and sold for any use defined in this subdivision, which are operated, drawn, or propelled by motor or animal power, but shall not include vehicular implements which are operated wholly by hand, and shall not include any motor vehicles required to be registered under Chapter 20 of the General Statutes.*

The term shall include all *nonvehicular implements* and mechanical devices designed and sold for any use defined in this subdivision, which have moving parts, or which require the use of any motor or animal power, fuel, or electricity in their operation but shall not include nonvehicular implements which have no moving parts and are operated wholly by hand.

The term shall also include metal flues sold for use in curing tobacco, whether such flues are attached

to handfired furnaces or used in connection with mechanical burners. [Emphasis added.]

We note initially that the statute defines machines to include nonvehicular implements which have moving parts, or which require the use of any motor or animal power in their operation. Giving these terms their ordinary meanings, we hold that the system assembled did not constitute a machine as defined by the statute. In fact, it resembled a greenhouse. Plaintiff and the trial court referred to it as a greenhouse, building, or structure.

The trial court made the following relevant findings of fact to which no exceptions were taken.

11. When the articles acquired from out-of-State vendors and the articles acquired from vendors within the State were properly assembled, constructed and connected, the resultant assembly of property constituted what the plaintiff has characterized as thirty-five "hygroponic growing systems."

12. When the articles . . . were completely assembled, constructed and connected, the structure had the physical appearance of a greenhouse, the walls and roof of which were made of . . . plastic covering . . . supported by the ribs and standards, . . . the floor of which was one of the concrete slabs, . . . which structure contained doors, fans, an evaporative cooler, furnaces, grow tubes, grow tables constructed of fiber board, lumber and angle iron, . . . pumps, pipes and other equipment and supplies, all of which contributed to the maintenance of an artificial environment which provided controlled amounts of nutrients, water, humidity, light and temperature conducive to the successful growth, cultivation and harvesting of tomatoes.

13. Within each greenhouse structure, employees of the plaintiff would insert cubes of peat moss containing tomato seeds into openings in the long plastic grow tubes which rested on the grow tables constructed by the plaintiff.

. . . .

16. Employees inside the structure would periodically measure the nutrient level of the water and as necessary, restore nutrients to it.

17. On more infrequent schedules, employees inside the structure would flush the entire system with water, and then reintroduce water and nutrients into the system.

18. Harvesting of ripe tomatoes was also accomplished inside the structure by employees of the plaintiff.

We do not believe that the definition of machines in G.S. 105-164.4(1)(g) can be construed to include this greenhouse-like structure. We find support in our decision in the language of the court in *Endres Floral Co. v. United States*, 450 F. Supp. 16 (N.D. Ohio, 1977), where the court was asked to determine if a greenhouse was a building, structure or machine, and therefore, eligible for certain exemptions for federal income tax purposes. There, the Court stated:

> With respect to this exception, the court looks to whether or not these greenhouses simply function as essentially items of machinery or equipment. In other words, do the greenhouses constitute mere processing chambers. *See Sunnyside Nurseries v. Commissioner*, 59 T.C. 113, 121 (1972). Examples of building-like structures which fall within the first exception are brick kilns and lumber kilns, and freezer structures used in the final processing of milk and ice cream products. The significant distinction between those structures and the greenhouses here at issue is that considerably more human activity is performed within the greenhouse structures. In cases in which structures have been held to be essentially machinery or equipment, the minimal amount of human activity has been emphasized. By contrast, there is more than a minimal amount of human activity performed within the Endres' greenhouses and this activity is essential to the care of the plants and the production of Endres' ultimate product — cut roses.

> The employees' work of pinching, pruning, fertilizing, spraying, and cutting the roses took place on a regular basis in the greenhouses. The growing of the rose plants required a considerable degree of skill and knowledge on the part of the employees. While the greenhouses provide a controlled environment for plant growth, they did not simply operate as processing chambers. *See Sunnyside Nurseries v. Commissioner*, 59 T.C. 113, 121 (1972). *Because of the amount of*

*human activity in the greenhouses, the structures fail to qualify as essentially items of machinery or equipment within the meaning of the first regulatory exception.*

*Id.* at 24 (emphasis added).

As did the greenhouses discussed in *Endres*, the hygroponic growing systems which are the subject of this dispute required substantial human activity within the system in order for the tomatoes to be cultivated and harvested. We believe that this amount of human activity within the system is too much for it to be classified as a machine.

Further, giving the term machine its ordinary meaning, we find it difficult to discern how this greenhouse could be called a machine. To hold such would allow any building or structure within which there are moving parts, systems or devices powered by machines to be classified as a machine. Such an interpretation would lead to absurd results not intended by the Legislature.

For the foregoing reasons, the judgment of the trial court is

Affirmed.

Chief Judge MORRIS and Judge MARTIN (Robert M.) concur.