IN THE MATTER OF THE APPLICATION AND CLAIM OF MELVIN C. WALSH, JR., A MEMBER OF THE ASHEVILLE POLICE DEPARTMENT, FOR RETIREMENT FOR DISABILITY WHILE ACTING IN THE LINE OF DUTY

No. 8528SC824

(Filed 4 March 1986)

1. **Retirement Systems § 5— policemen's pension fund legislation—intent to preserve prior benefits**

    In enacting Ch. 188 of the 1977 Session Laws which superseded the Asheville policeman's pension fund legislation then in effect, the Legislature intended to preserve an employee's entitlement to benefits under the previously enacted pension fund act regardless of whether those benefits in fact accrued before the effective date of the new act.

2. **Retirement Systems § 5— line-of-duty disability benefits—consideration of claim under wrong act**

    Petitioner was entitled to have his claim for line-of-duty disability retirement benefits for disability from a heart attack considered under the pension fund act in effect at the time he was hired by the Asheville Police Department in 1960, and the city council committed prejudicial error in considering the claim under the 1977 pension fund act where the council, in denying petitioner's claim, relied on the narrow definition of "line of duty" in the 1977 act, and the council could have determined that petitioner was disabled "while acting in the line of duty" under the provisions of the pension fund legislation in effect when he was hired as a policeman.

APPEAL by petitioner from *Lewis, Robert D., Judge.* Judgment entered 26 April 1985 in Superior Court, BUNCOMBE County. Heard in the Court of Appeals 10 December 1985.

During the early evening of 5 October 1983, while on duty as a member of the Asheville Police Department, petitioner began to

suffer chest and arm pains. During that evening petitioner's work consisted primarily of making investigative telephone calls from the police department.

At approximately 11:30 p.m. petitioner left the department to investigate the scene of a rape. At the scene a fellow officer observed that petitioner was pushing upward in the area of his diaphragm and that his face was discolored. Petitioner went home shortly thereafter. Early the next morning he awoke with increased chest pains and was taken to the hospital. He was diagnosed as having had an acute myocardial infarction (a heart attack of moderate severity).

On 31 May 1984 petitioner applied to the Board of Examiners and Board of Trustees of the Asheville Policemen's Pension and Disability Fund for retirement benefits by reason of having become disabled while acting in the line of duty. After a hearing the Board of Examiners determined that petitioner was disabled, but characterized his disability as having not been received in the line of duty. The Board of Trustees adopted the recommendation of the Board of Examiners. The Asheville City Council approved the Board's denial of petitioner's request for line-of-duty disability retirement.

On 31 December 1984 petitioner's Petition for Writ of Certiorari seeking judicial review of the city council's decision was granted pursuant to N.C. Gen. Stat. 1-269. By judgment entered 26 April 1985 the superior court upheld the council's denial of petitioner's request for line-of-duty disability benefits.

Petitioner appeals.

*Roberts, Cogburn, McClure & Williams, by Max O. Cogburn, Isaac N. Northup, Jr., and Glenn S. Gentry, for petitioner appellant.*

*William F. Slawter for respondent appellee.*

WHICHARD, Judge.

The scope of judicial review of a decision made by a town board sitting as a quasi-judicial body must include:

(1) Reviewing the record for errors in law,

(2) Insuring that the procedures specified by law in both statute and ordinance are followed,

(3) Insuring that appropriate due process rights of a petitioner are protected including the right to offer evidence, cross-examine witnesses and inspect documents,

(4) Insuring that decisions of town boards are supported by competent, material and substantial evidence in the whole record, and

(5) Insuring that decisions are not arbitrary and capricious.

*Concrete Co. v. Board of Commissioners*, 299 N.C. 620, 626, 265 S.E. 2d 379, 383, *rehearing denied*, 300 N.C. 562, 270 S.E. 2d 106 (1980); *Cannon v. Zoning Bd. of Adjustment of Wilmington*, 65 N.C. App. 44, 46, 308 S.E. 2d 735, 736-37 (1983). Both the superior court and the Court of Appeals are bound by the foregoing scope of review. *Concrete Co.*, 299 N.C. at 627, 265 S.E. 2d at 383.

The initial question for this Court is which of a series of amendments to the Asheville policemen's pension fund legislation applies to petitioner's claim for benefits. Petitioner began working for the Asheville Police Department 1 April 1960. At that time the pension fund provided for increased disability payments to any member of the Asheville Police Department who became "disabled while acting in the line of his police duties, and is unable to work . . . ." 1939 N.C. Public-Local Laws, ch. 242, sec. 7, as amended by 1955 N.C. Sess. Laws, ch. 322, sec. 2. Chapter 188 of the 1977 Session Laws superseded the Asheville policemen's pension fund legislation in effect when petitioner began working for the police department. Eligibility requirements for line-of-duty disability benefits were broadened by the provisions of the 1977 pension fund legislation. It provided that any member of the Asheville Police Department who becomes "disabled while acting in the line of his police duties or as a result of the performance of duties as a member of the Asheville Police Department, and is unable to work as a policeman," is entitled to line-of-duty disability benefits. 1977 N.C. Sess. Laws, ch. 188, sec. 9. The eligibility requirements for line-of-duty disability benefits were again amended in 1979. The 1979 amendments provided that any member of the Asheville Police Department who becomes "disabled while acting in the line of duty, as defined in this act, and

is unable to work as a policeman . . ." shall receive line-of-duty disability benefits. 1979 N.C. Sess. Laws, ch. 429, sec. 1(d), as amended by 1985 N.C. Sess. Laws, ch. 647, sec. 1. "Line of duty" is defined as follows:

> For purposes of this act, references to "line of duty" shall mean a disability or death which is the natural and proximate result of an accident occurring while in the actual perform-ance of duty as a member of the Asheville Police Depart-ment, as defined in this act, at some definite time and place.

1979 N.C. Sess. Laws, ch. 429, sec. 1(d).

The city council denied petitioner's claim for line-of-duty disability benefits under the provisions of the 1977 pension fund legislation as amended by chapter 429 of the 1979 Session Laws. Petitioner maintains, however, that his claim for benefits should have been considered under the provisions of the pension fund legislation as they appeared 1 April 1960, the date he began work-ing for the Asheville Police Department. He argues that any ap-plication of subsequent amendments to his claim constitutes a violation of his constitutional rights to due process and equal pro-tection.

[1] We need not reach petitioner's constitutional arguments. Chapter 188, section 28 of the 1977 Session Laws, as amended by chapter 261, section 2 of the 1981 Session Laws, limits the effect of the 1977 pension fund legislation as follows:

> No provision of this act shall be construed so as to modify in any respect the benefits granted under Chapter 242, Public-Local Laws of 1939, amended by Chapter 311, Ses-sion Laws of 1945 and Chapter 322, Session Laws of 1955 *to employees of the Asheville Police Department assigned to said department prior to the effective date of this act* or to the effective date of any such employees' retirement and disability plan covering future employees of such department; provided, however, that employees of said department cov-ered by this act may within one year after the effective date of any new plan, voluntarily and irrevocably elect in writing to withdraw from participation in said existing plan and to participate in and contribute to the new plan for their depart-ment, in which case they shall be entitled to no further

benefits of said existing plan and shall be entitled to withdraw all contributions made by them into said plan. [Emphasis supplied.]

By using the phrase "benefits granted," the legislature arguably intended to preserve only those benefits which accrued under the previously enacted pension fund act as the result of a disability or retirement prior to the effective date of the new act. We believe the better interpretation, however, is that it intended to preserve the "benefits granted" under the previous act, regardless of whether those benefits in fact accrued before the effective date of the new act.

The language emphasized above supports such an interpretation. The legislature in essence provided that the provisions of the previously enacted plan continue to apply "*to employees of the Asheville Police Department assigned to said department prior to the effective date of [the 1977 pension fund act] . . .,*" not just to those employees who actually had been disabled or had retired as of that date. The remaining portions of section 28 preserve an employee's entitlement to benefits under the newly enacted pension fund act in the event of subsequent pension fund legislation. It is reasonable to conclude that the legislature also intended to preserve an employee's entitlement to benefits under the previously enacted pension fund act. In enacting section 28 the legislature undoubtedly sought to avoid the constitutional questions raised by retroactive application of amendments to public pension fund legislation. *See e.g., Wagoner v. Gainer*, 279 S.E. 2d 636 (W.Va. 1981); *Blackwell v. Quarterly County Court*, 622 S.W. 2d 535 (Tenn. 1981); *Public Employees' Retirement Board v. Washoe County*, 96 Nev. 718, 615 P. 2d 972 (1980); *Taylor v. Public Employees' Retirement Ass'n*, 189 Colo. 486, 542 P. 2d 383 (1975).

[2] As petitioner was an employee of the Asheville Police Department prior to the effective date of the 1977 pension fund act, his claim to line-of-duty disability benefits must be considered under the provisions of "Chapter 242, Public-Local Laws of 1939, amended by Chapter 311, Session Laws of 1945 and Chapter 322, Session Laws of 1955 . . . ." 1977 N.C. Sess. Laws ch. 188, sec. 28, as amended by 1981 N.C. Sess. Laws, ch. 261, sec. 2. Thus, the council erred as a matter of law in applying chapter 188 of the

1977 Session Laws as amended by chapter 429 of the 1979 Session Laws.

The council's error clearly prejudiced petitioner's claim for line-of-duty disability benefits. While the provisions of both pension funds provide similar benefits for policemen disabled while acting in the "line of duty," chapter 429, section 1(d) of the 1979 Session Laws, quoted *supra*, narrowly defines line of duty. The following findings of fact indicate that the council relied heavily upon that narrow definition of "line of duty":

> 22. The heart attack sustained by Mr. Walsh on October 5 or October 6, 1983, does not constitute "an accident occurring while in the actual performance of duty . . . at some definite time and place" as required by Section 9(A) of the Policemen's Pension Fund Law (Chapter 429, 1979 Session Laws).

> 23. Even [if] it were conceded that the heart attack sustained by Mr. Walsh was "an accident" as required by Section 9(A), Mr. Walsh's disability is not the "natural and proximate result" of the heart attack per se.

Further, the definition of "line of duty" contained in chapter 429, section 1(d) of the 1979 Session Laws and relied upon by the council differs greatly from the Supreme Court's interpretation of what constitutes "acting in the line of duty" under the terms of the pension fund legislation in effect when petitioner was hired. *See In re Duckett*, 271 N.C. 430, 156 S.E. 2d 838.[1]

In *Duckett*, an Asheville fireman suffered a heart attack and died while on duty. Shortly before the fatal heart attack he had attempted to beat out a fire with a pine branch. There was no evidence, however, that he had been "overcome with smoke or anything of that sort." *Duckett*, 271 N.C. at 431, 156 S.E. 2d at 840. Moreover, testifying medical experts found "[no] real evidence that the exertion itself caused the infarction . . . ."

---

1. In *Duckett* the Court interpreted provisions of the "Asheville Firemen's Pension and Disability Fund," 1939 N.C. Public-Local Laws, ch. 243, sec. 7 as amended by 1955 N.C. Sess. Laws, ch. 320, sec. 2. *Duckett*, 271 N.C. at 434, 156 S.E. 2d at 842. The provisions of that fund exactly parallel the provisions of the Asheville policemen's pension fund legislation in effect at the time plaintiff was hired. 1939 N.C. Sess. Laws, ch. 242, sec. 7, as amended by 1955 N.C. Sess. Laws, ch. 322, sec. 2. Subsequently, the Asheville firemen's pension fund legislation has been repealed. 1981 N.C. Sess. Laws, ch. 261, sec. 2.

*Duckett*, 271 N.C. at 432, 156 S.E. 2d at 840. Concluding "[t]hat said heart attack was not caused and did not result from exertion or exhaustion related directly or indirectly to fire fighting, or line of duty, but rather resulted from some disease or condition or infirmity . . . ," the Board of Examiners denied the fireman's widow line-of-duty disability benefits. *Duckett*, 271 N.C. at 432, 156 S.E. 2d at 841. The superior court granted a Writ of Certiorari, reversed the decision of the Board of Examiners, and awarded line-of-duty disability benefits to the widow.

In affirming the court's order the Supreme Court noted that " '[t]he right to a pension depends upon the statutory provision therefor, and the existence of such right in particular instances is determinable primarily from the terms of the statute under which the right or privilege is granted.' " *Duckett*, 271 N.C. at 434, 156 S.E. 2d at 842 *quoting* 40 Am. Jur. *Pensions* sec. 23, p. 980. The court applied the rule that "words of a statute must be given their natural or ordinary meaning," *Duckett*, 271 N.C. at 437, 156 S.E. 2d at 844, and concluded that:

> [A] person is acting 'while in the line of duty' when he acts at the time and place he is required to be at work and when he is engaged in the performance of his duties or is engaged in activities incidental to his duties. The term 'while in line of duty' is synonymous with 'while in the course of employment' or 'while in the discharge of duty.' . . .
>
> In order for appellant to prevail, we would have to read into the statute a requirement that there be a causal relation between his disability and his duties. This we cannot do.

*Duckett*, 271 N.C. at 437, 156 S.E. 2d at 844.

Thus, under the provisions of the pension fund legislation in effect when petitioner was hired, the council could have determined that he was disabled "while acting in the line of duty." The court erred in concluding that the council's decision was not affected by error of law. The judgment is therefore vacated, and the cause is remanded to the superior court with instructions to remand to the Asheville City Council for a determination in accord with this opinion.

Vacated and remanded.

Judges BECTON and PARKER concur.