IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA16-202

Filed: 17 January 2017

Mecklenburg County, No. 14 CVS 21212

BROOKLINE RESIDENTIAL, LLC and RESIDENCES AT BROOKLINE LLC, Plaintiffs,

v.

CITY OF CHARLOTTE; and INTERNATIONAL FIDELITY INSURANCE COMPANY, Defendants.

Appeal by plaintiffs from order entered 24 August 2015 by Judge Hugh B. Lewis in Mecklenburg County Superior Court. Heard in the Court of Appeals 10 August 2016.

*Morningstar Law Group, by William J. Brian, Jr., Shannon R. Joseph, and Jeffrey L. Roether, for plaintiffs-appellants.*

*Senior Assistant City Attorney, Lina E. James, for defendant-appellee City of Charlotte.*

*Johnston, Allison & Hord, P.A., by Martin L. White and Munashe Magarira, for defendant-appellee International Fidelity Insurance Company.*

DAVIS, Judge.

This case presents the issue of whether a successor developer may compel the City of Charlotte to enforce a performance bond that had originally been obtained by the prior developer to guarantee the construction of certain infrastructure improvements. Brookline Residential, LLC and Residences at Brookline, LLC (collectively "Brookline") appeal from an order granting summary judgment in favor of the City of Charlotte (the "City") and International Fidelity Insurance Company

("IFIC") (collectively "Defendants") and denying Brookline's cross-motion. After careful review, we affirm the trial court's order for the reasons set forth below.

**Factual and Procedural Background**

In 2007, Clarion-Reames, LLC ("Clarion-Reames"), a developer, sought to construct a residential housing development called Brookline Phase 1 on a parcel of land (the "Property") in Charlotte, North Carolina. In early 2008, Clarion-Reames received final approval from the City to record plats for a section of the development known as "Phase 1, Map 1." In order to receive this approval, Clarion-Reames agreed to complete certain road improvements (the "Original Road Improvements") to nearby Lakeview Road and Reames Road estimated to cost $683,500, and on 26 February 2008 Clarion-Reames obtained a surety bond (the "Bond") from IFIC to guarantee construction of the improvements.

The Bond listed Clarion-Reames as the principal, IFIC as the obligor, and the City as the obligee. The Bond stated that if Clarion-Reames was "in default under its obligation to install improvements" pursuant to the Subdivision Final Plat Approval Form it had submitted in connection with final approval of Phase I, Map I, IFIC "will (a) within fifteen (15) days of determination of such default, take over and assume completion of said improvements, or (b) pay the City of Charlotte in cash the reasonable cost of completion."

Although Clarion-Reames obtained the Bond as a precondition to final plat approval of Phase I, Map I — which was to consist of 10 single-family homes — the bonded improvements covered all of the required public road improvements for the entire Brookline Phase 1 development, which was to consist of 184 single-family homes.

By 2010, Clarion-Reames had constructed only nine of the planned 184 homes in the Brookline development and had completed some, but not all, of the bonded road improvements. In early 2010, Clarion-Reames ceased work on the development because it was unable to raise sufficient capital for the project.

In July 2011, Clarion-Reames's lender foreclosed on the Property, which was purchased by Brookline in May 2012. Before making the purchase, Brookline had made inquiries to the City about the status of the Bond. In an email to Neil Kapadia, one of Brookline's two principals, the Customer Service and Permitting Manager for the City, Nan Peterson, stated that "the City does have a bond for the . . . improvements on Lakeview and Reames Road."

In February 2013, Brookline recorded several new plats in order to combine a number of lots on the Property that had been depicted as individual lots in the original Brookline Phase I plan. Brookline then filed a rezoning petition with the City in early 2013 in order to receive approval for its plans to build multi-family housing on the Property. On 30 April 2013, while that rezoning petition was pending,

Brookline made another inquiry to the City regarding the status of the Bond. Tom Ferguson, the Engineering Program Manager for the City, provided the following response in an email to Kapadia:

> 1) **What does the bond cover?** The bond covers the required improvements to Lakeview and Reames Roads as specified on the subdivision plans approved by the City on September 6, 2007.
>
> 2) **When will the City call the bond and complete the remaining improvements?** The prior developer/owner has completed sufficient improvements to safely serve the limited development which has occurred to date (only 9 homes built so far). The unfinished improvements include widening for turn lanes, curb & gutter, and sidewalk along Reames Road and a segment of sidewalk on Lakeview Road east of Cushing Street. Until there is additional development activity within the site to warrant construction of the turn lanes on Reames Road, we do not plan to call the bond and complete the remaining improvements.
>
> You previously contacted our office in February 2012 regarding the status of the referenced bond. At that time, we confirmed that the bond was still in place and that the original developer (or the surety) remained responsible for completing the improvements to Reames Road and Lakeview Road. Since that time, you have filed a rezoning petition for the site. The site plan associated with your rezoning petition (2013-047) proposes to relocate the street connections to Reames Road approximately 200 feet north of the connection point shown on the currently approved subdivision plans. Please be advised that the currently held performance bond guarantees construction of improvements as specified on the subdivision plans approved in September 6, 2007. *If you make changes to the approved plans upon which the current performance bond was based, you will likely become fully responsible for all*

*roadway improvements specified on the revised plans.*

(Emphasis added.)

After receiving this email, Brookline went forward with its rezoning plans, and in July 2013 the City approved Brookline's rezoning petition to allow for multi-family apartment units on the Property. In November 2014, the City approved Brookline's subdivision plan, which provided for certain road improvements (the "Altered Road Improvements") that included several new improvements along with most of the Original Road Improvements. As part of the approval process, Brookline committed to making the Altered Road Improvements.

In the spring and summer of 2014, Brookline tried unsuccessfully to convince the City to call the Bond and force IFIC to pay for the portions of the Original Road Improvements that had not yet been completed and were included within the Altered Road Improvements. After failing to persuade the City to enforce the Bond, Brookline filed the present action against Defendants in Mecklenburg County Superior Court on 17 November 2014. Defendants each filed motions to dismiss, which the trial court denied on 28 May 2015.

Brookline filed an amended complaint on 3 June 2015 in which it requested various forms of declaratory relief relating to the Bond, including a declaration that "the City [was] obligated either to call the Bond and provide those funds to Plaintiffs to use to construct the portion of the Original Road Improvements that remain part

of the Altered Road Improvements, or tender as damages to Plaintiffs the cost to construct the portions of the Original Road Improvements that remain of [sic] part of the Altered Road Improvements." Brookline sought accompanying injunctive relief requesting that the trial court direct (1) the City to call the Bond and fund the construction of the Original Road Improvements; (2) IFIC to pay the City the funds necessary to complete the portions of the Original Road Improvements that remained part of the Altered Road Improvements; and (3) the City to advance to Plaintiffs all funds received from IFIC pursuant to the Bond for Brookline's use in completing the Altered Road Improvements. Brookline also asserted a claim, in the alternative, for the recovery of damages for the expenses it would incur if it was required to construct the portions of the Original Road Improvements contained within the Altered Road Improvements.

The parties filed cross-motions for summary judgment, and a hearing was held on 3 August 2015 before the Honorable Hugh B. Lewis. On 24 August 2015, the trial court entered an order granting Defendants' motions for summary judgment and denying Brookline's cross-motion. Brookline filed a timely notice of appeal.

**Analysis**

"On an appeal from an order granting summary judgment, this Court reviews the trial court's decision *de novo*. Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the

affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law." *Premier, Inc. v. Peterson*, 232 N.C. App. 601, 605, 755 S.E.2d 56, 59 (2014) (internal citations and quotation marks omitted). "The moving party has the burden of demonstrating the lack of any triable issue of fact and entitlement to judgment as a matter of law. The evidence produced by the parties is viewed in the light most favorable to the non-moving party." *Hardin v. KCS Int'l, Inc.*, 199 N.C. App. 687, 695, 682 S.E.2d 726, 733 (2009) (internal citations omitted). We have held that "[a]n issue is 'genuine' if it can be proven by substantial evidence and a fact is 'material' if it would constitute or irrevocably establish any material element of a claim or a defense." *In re Alessandrini*, __ N.C. App. __, __, 769 S.E.2d 214, 216 (2015) (citation omitted).

Brookline's argument that the trial court erred in granting summary judgment in favor of Defendants essentially rests on two main contentions: (1) that the City had an obligation to seek enforcement of the Bond upon Clarion-Reames's default and Brookline is entitled to compel the City's performance of that duty;[1] and (2) that the City's obligation remains ongoing because the Bond was neither invalidated nor extinguished despite the changes in zoning and road improvement plans that

---

[1] Brookline does not argue that it possesses the authority itself to call the Bond. Rather, it contends that the City has a legal duty to call the Bond and that Brookline has the right to compel the City to exercise this power through the present action.

occurred after Brookline purchased the property. Because our analysis of the first issue is dispositive of this appeal, we need not address the second issue.

Brookline argues that "a municipality's statutory authority to obtain a performance bond to secure improvements required in connection with the approval and recordation of a subdivision plat, carries an implicit obligation on the municipality to enforce that bond when the primary obligor defaults and loses the development to foreclosure." In order to determine the validity of this contention on the present facts, we must analyze the relevant statutes enacted by the General Assembly and the applicable ordinance passed by the City pertaining to the use of performance bonds in regulating subdivision development.

The General Assembly has provided that "[a] city may by ordinance regulate the subdivision of land within its territorial jurisdiction." N.C. Gen. Stat. § 160A-371 (2015). Such municipal ordinances

> may provide for the more orderly development of subdivisions by requiring the construction of community service facilities in accordance with municipal plans, policies, and standards. To assure compliance with these and other ordinance requirements, the ordinance may provide for performance guarantees to assure successful completion of required improvements. If a performance guarantee is required, the city shall provide a range of options of types of performance guarantees, including, but not limited to, surety bonds or letters of credit, from which the developer may choose. . . .

N.C. Gen. Stat. § 160A-372(c) (2013).[2]

The City's subdivision ordinance during the time period relevant to this action

stated, in pertinent part, as follows:

> Unless specifically noted, before any final plat of a subdivision is eligible for final approval, and before any street is accepted for maintenance by the city or the state department of transportation, minimum improvements, including drainage and soil erosion, must have been completed by the developer and approved by the city or county engineer in accordance with the standards and specifications of the Charlotte Land Development Standards manual or bonded in accordance with section 20-58(c).

Charlotte, N.C., Code § 20-51. Section 20-58(c) of the ordinance, in turn, provided in

relevant part the following:

> Where the improvements required by this chapter have not been completed prior to the submission of the final subdivision plat for approval, the approval of the plat will be subject to the owner filing a surety bond or an irrevocable letter of credit with the engineering department . . . with sureties satisfactory to the city guaranteeing the installation of the required improvements . . . . Upon completion of the improvements and the submission of as-built drawings, as required by this chapter, written notice thereof must be given by the subdivider to the appropriate engineering department. The engineering department will arrange for an inspection of the improvements and, if found satisfactory, will, within 30 days of the date of the notice, authorize in writing the release of the security given, subject to the warranty requirement.

---

[2] There were a number of changes made to N.C. Gen. Stat. § 160A-372 in 2015 that became effective after 1 October 2015. *See* 2015 Sess. Laws 486, 486-90, ch. 187, §§ 1-3. We apply the prior version of the statute that was in effect during the time period relevant to this action.

Charlotte, N.C., Code § 20-58(c).

We must interpret the above-quoted statutes and ordinance according to well-established principles of statutory construction. *See Woodlief v. Mecklenburg Cty.*, 176 N.C. App. 205, 209, 625 S.E.2d 904, 907 ("The rules applicable to the construction of statutes are equally applicable to the construction of municipal ordinances." (citation and quotation marks omitted)), *disc. review denied*, 360 N.C. 492, 632 S.E.2d 775 (2006).

> The primary objective of statutory interpretation is to ascertain and effectuate the intent of the legislature. If the language of the statute is clear and is not ambiguous, we must conclude that the legislature intended the statute to be implemented according to the plain meaning of its terms. Thus, in effectuating legislative intent, it is our duty to give effect to the words actually used in a statute and not to delete words used or to insert words not used.

*Lunsford v. Mills*, 367 N.C. 618, 623, 766 S.E.2d 297, 301 (2014) (internal citations and quotation marks omitted).

Based upon our careful reading of the above-quoted provisions, we are unable to conclude that Brookline is entitled to an order compelling the City to call the Bond. Neither the statutes nor the ordinance contain language either specifying the circumstances under which the City must enforce a performance guarantee or authorizing a developer to compel the City to take such action. This Court is not at liberty to read into the statutes and ordinance words that simply do not exist therein.

*See id.* (holding that in construing statutes courts must not "insert words not used"); *In re Duckett*, 271 N.C. 430, 436, 156 S.E.2d 838, 844 (1967) ("It is not within the province of a court to read a meaning into a statute that is not warranted by the legislative language.").

In an attempt to show that the City had a duty to call the Bond, Brookline points to the language in N.C. Gen. Stat. § 160A-372(c) providing that "[t]o assure compliance with . . . ordinance requirements, the ordinance may provide for performance guarantees to assure successful completion of required improvements." N.C. Gen. Stat. § 160A-372(c). Brookline then asserts that the City's ordinance implementing this statute provides for only one set of circumstances under which a bond may be released — that is, when the City, upon inspection, certifies that the bonded improvements have been completed. *See* Charlotte, N.C., Code § 20-58(c) ("Upon completion of the improvements and the submission of as-built drawings, as required by this chapter, written notice thereof must be given by the subdivider to the appropriate engineering department. The engineering department will arrange for an inspection of the improvements and, if found satisfactory, will, within 30 days of the date of the notice, authorize in writing the release of the security given . . . .").

However, while this language explains how a bond may be satisfied and released after agreed-upon improvements have been made, it does not speak to when — and under what circumstances — the City *must* seek enforcement of a bond. Thus,

no duty on the City's part to enforce such bonds is expressly contained in the statutes or the ordinance. And Brookline has failed to persuade us that such a duty is implied therein.

Moreover, even assuming *arguendo* that there are, in fact, some conceivable circumstances under which the City could be compelled to enforce a performance bond by an appropriate party, Brookline is not such a party. Here, Brookline was not a party to the Bond, was not assigned rights under the Bond, and was not a third-party beneficiary of the Bond.[3] Furthermore, Brookline (1) was expressly warned by the City before rezoning the Property and altering the road improvement plans that "[i]f you make changes to the approved plans upon which the current performance bond was based, you will likely become fully responsible for all roadway improvements specified on the revised plans"; and (2) made a commitment to the City — in connection with the City's approval of Brookline's development plans — to construct the required road improvements itself.

While our ruling in this case is based entirely on North Carolina law, we note that our decision is consistent with two recent decisions from other jurisdictions that have addressed similar issues.[4] In *Ponderosa Fire District v. Coconino County*, 235

---

[3] A "public performance bond is a contract, governed by the law of contracts." *Town of Pineville v. Atkinson/Dyer/Watson Architects, P.A.*, 114 N.C. App. 497, 499, 442 S.E.2d 73, 74 (1994).

[4] Although decisions from other jurisdictions are not binding on this Court on an issue arising under North Carolina law, we may consider such decisions as persuasive authority. *See Carolina*

Ariz. 597, 334 P.3d 1256 (Ct. App. 2014), the original developer obtained several bonds to guarantee infrastructure improvements tied to plat approval by Coconino County of a portion — referred to as Unit 3 — of a larger housing development. Units 1 and 2 had already been finished and their improvements installed. The original developer went bankrupt before it could build any homes on — or complete the infrastructure improvements for — Unit 3. *Id.* at 599, 334 P.3d at 1258.

After several trustee sales, a successor developer, Bellemont 276, L.L.C. ("Bellemont"), purchased Unit 3 in order to build homes on it and then sell them to the public. Bellemont attempted to persuade Coconino County to call the bonds that had been obtained by the original developer and covered the required improvements to Unit 3. After failing to convince the county to enforce these bonds, Bellemont brought suit against the county. In its complaint, Bellemont "alleg[ed] that it had acquired Unit 3 with the expectation the bonds would be called to pay for the remaining improvements and infrastructure" and "requested declaratory relief, a writ of mandamus compelling the County to call the bonds, and monetary damages." *Id.* at 600, 334 P.3d at 1259.

---

*Power & Light Co. v. Employment Sec. Comm'n of N.C.*, 363 N.C. 562, 569, 681 S.E.2d 776, 780 (2009) (noting that while not binding, a decision from another jurisdiction was nonetheless "instructive"); *State v. Williams*, 232 N.C. App. 152, 157, 754 S.E.2d 418, 422 ("While we recognize that decisions from other jurisdictions are, of course, not binding on the courts of this State, we are free to review such decisions for guidance." (citation and quotation marks omitted)), *appeal dismissed and disc. review denied*, 367 N.C. 784, 766 S.E.2d 846 (2014); *Skinner v. Preferred Credit*, 172 N.C. App. 407, 413, 616 S.E.2d 676, 680 (2005) ("Because this case presents an issue of first impression in our courts, we look to other jurisdictions to review persuasive authority that coincides with North Carolina's law."), *aff'd*, 361 N.C. 114, 638 S.E.2d 203 (2006).

On appeal, the Arizona Court of Appeals examined the relevant Arizona statute, which stated in pertinent part that subdivision regulations adopted by a county "shall require the posting of performance bonds, assurances or such other security as may be appropriate and necessary to ensure the installation of required street, sewer, electric and water utilities, drainage, flood control and improvements meeting established minimum standards of design and construction." *Id.* at 602, 334 P.3d at 1261.

The court held that the statute "plainly require[s] the County to 'ensure' that the amount of the bond posted by a developer is sufficient to cover the cost of necessary subdivision improvements. The statute does not, however, specify when a county is required to call a bond." *Id.* at 603, 334 P.3d at 1262. The court then stated as follows:

> We conclude the County's decision not to call the bonds at this time was a proper exercise of its necessary and implied power under [the statute]. The legislative purpose of the statute is to require developers such as Bellemont to pay for the cost of subdivision improvements. Here, the County determined that calling the bonds did not serve this interest; rather, the County decided, in its discretion, to forego calling the bonds and require Bellemont to pay for the cost of the Unit 3 improvements.
>
> In support of this conclusion, we note that Bellemont's construction of [the statute] would lead to absurd results. Under Bellemont's interpretation of the statute, whenever a developer abandons a subdivision, a county has a mandatory duty to call the bond, regardless of the circumstances. This leaves counties with an open-ended

> obligation to finish all abandoned subdivision improvements, with no discretion to consider *any* factors that may arise after the final plat is approved. For example, counties would be required to call a bond and finish improvements for a subdivision that may lay vacant for many years. . . .
>
> We therefore conclude the County exercised its discretion under the statute by seeking to have Bellemont install the required subdivision improvements rather than calling the bonds.

*Id.* at 603-04, 334 P.3d at 1262-63 (internal citations omitted).

The court then examined the relevant Coconino County ordinance, which provided as follows:

> The Final Plat will be submitted to the Board for approval if the construction and improvements have been accepted or if a cash deposit or other financial arrangement acceptable to the County have been made between the subdivider and the Board. In the event the subdivider fails to perform within the time allotted by the Board, then after reasonable notice to the subdivider of the default, the County may do or have done all work and charge subdivider's deposit with all costs and expenses incurred.

*Id.* at 604, 334 P.3d at 1263 (emphasis omitted).

The court concluded that the language of this ordinance — like the language of the statute — did not limit the county's discretion as to when to call the bonds. Accordingly, the court determined that Bellemont was not entitled to an order compelling the county to enforce the bonds covering Unit 3. *Id.* at 605, 334 P.3d at 1264.

Similarly, in *LDS Development, LLC v. City of Eugene*, 280 Or. App. 611, 382 P.3d 576 (2016), the original developer represented to the City of Eugene, Oregon that it would install certain infrastructure improvements in connection with the city's approval of a development project and obtained a bond guaranteeing its performance. That developer then withdrew from the project before completing the bonded improvements. A successor developer purchased the property and subsequently sued the city, alleging that the city was required to either finish the improvements itself or call the performance bond. *Id.* at 616, 382 P.3d at 579.

On appeal, the Oregon Court of Appeals held that the applicable

> statutes and city code provisions do not require that the city actually exercise its right to call in a bond or complete the improvements itself in the event that a developer fails to do so. Certainly the city may exercise its discretion to complete planned improvements or to enforce a bond provided by a subdivider who failed to fulfill its obligations, but, under the operative statutes, the city is not required to do so.

*Id.* at 620, 382 P.3d at 582. Thus, the reasoning in *Ponderosa* and *LDS* is fully consistent with our ruling on this issue.

In light of our holding that Brookline lacks authority to compel the City to call the Bond and has no legal rights with respect to the Bond, we likewise reject the notion that it is entitled to any of the other forms of declaratory or injunctive relief requested in its amended complaint. *See Beachcomber Props., L.L.C. v. Station One, Inc.*, 169 N.C. App. 820, 824, 611 S.E.2d 191, 194 (2005) ("Absent an enforceable

contract right, an action for declaratory relief to construe or apply a contract will not lie."); *DeMent v. Nationwide Mut. Ins. Co.*, 142 N.C. App. 598, 600, 544 S.E.2d 797, 799 (2001) (concluding that "because plaintiff was a stranger to [the] insurance contract . . . , plaintiff lacked standing to seek a declaratory judgment construing the policy provisions"). Nor do we discern any legal basis upon which Brookline would be entitled to recover monetary damages stemming from the City's exercise of its discretion in not enforcing the Bond.

For these reasons, we hold that the trial court properly granted Defendants' motions for summary judgment and denied Brookline's cross-motion. However, we note that while the precise basis for the trial court's ruling is not entirely clear from its 24 August 2015 order, it appears that the trial court's decision was based primarily on the notions that (1) Brookline's rezoning of the property from single-family homes to multi-family apartments "drastically changed" the 2008 preliminary subdivision plans approved by the City; and (2) the road improvements constructed by Clarion-Reames before the foreclosure were adequate to support the nine existing single-family homes in the development. We need not address either of these issues given our holding that Brookline is not entitled to any of the relief sought in its pleadings because it lacks a legal basis to compel the City to call the Bond or any other legal rights relating to the Bond.

Accordingly, we affirm the ultimate result reached by the trial court albeit for different reasons. *See State v. Austin*, 320 N.C. 276, 290, 357 S.E.2d 641, 650 (1987) ("A correct decision of a lower court will not be disturbed on review simply because an insufficient or superfluous reason is assigned. The question for review is whether the ruling of the trial court was correct and not whether the reason given therefor is sound or tenable." (citation omitted)), *cert. denied*, 484 U.S. 916, 98 L. Ed. 2d 224 (1987); *Cape Fear Pub. Util. Auth. v. Costa*, 205 N.C. App. 589, 598, 697 S.E.2d 338, 343 (2010) (affirming trial court's order granting summary judgment for reasons different from those articulated by trial court).

## Conclusion

For the reasons stated above, we affirm.

AFFIRMED.

Judges ELMORE and DIETZ concur.