Murphy-Brown, LLC v. Ace Am. Ins. Co., 2020 NCBC 19.

STATE OF NORTH CAROLINA

COUNTY OF WAKE

MURPHY-BROWN, LLC and
SMITHFIELD FOODS, INC.,

            Plaintiffs,

      v.

ACE AMERICAN INSURANCE
COMPANY, et al.,

            Defendants.

AMERICAN GUARANTEE &
LIABILITY INSURANCE
COMPANY,

            Counterclaim/
            Third Party
            Plaintiff,

      v.

MURPHY-BROWN, LLC and
SMITHFIELD FOODS, INC.,

            Counterclaim
            Defendants,

and

BANDIT 3 LLC DBA CROOKED
RUN FARM, et al.,

            Third Party
            Defendants.

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
19 CVS 2793

**ORDER AND OPINION ON
COUNTERCLAIM DEFENDANTS'
MOTIONS TO DISMISS**

THIS MATTER comes before the Court upon Counterclaim Defendants Murphy-Brown, LLC ("Murphy-Brown"); Murphy-Brown's Hog Growers ("Growers") and the Growers' insurance providers' ("Grower Insurers") (collectively Murphy-Brown, Growers, and Grower Insurers are referred to as "Counterclaim Defendants") Motions to Dismiss American Guarantee & Liability Insurance Company's ("Zurich") Counterclaim. ("Motions," ECF Nos. 231, 233, 234, 237, 238, 239, 240, 243, 247, 258, 276[1].)

THE COURT, having considered the Motions, the briefs filed in support of and in opposition to the Motions, the arguments of counsel at the hearing on the Motions, and other appropriate matters of record, concludes that the Motions should be GRANTED.

*Middlebrooks Law, PLLC by James Middlebrooks for Plaintiffs Murphy-Brown, LLC and Smithfield Foods, Inc.*

*Reed Smith LLP by Evan T. Knott and John D. Shugrue for Plaintiffs Murphy-Brown, LLC and Smithfield Foods, Inc.*

*Smith, Anderson, Blount, Dorsett, Mitchell & Jernigan, LLP by Michael W. Mitchell for Plaintiffs Murphy-Brown, LLC and Smithfield Foods, Inc.*

*Ragsdale Liggett PLLC by Henry Lee Evans and Amie C. Sivon for Counterclaim Defendant Hog Growers.*

---

[1] On January 21, 2020, Nicholas Herring d/b/a/ Langston Nursery ("Langston") filed its Motion to Dismiss. ("Langston Motion," ECF No. 276.) Langston incorporates by reference the Growers' arguments for dismissal. (*Id.*) Langston's Motion was filed subsequent to the Court's Notice of Hearing on the Motions (ECF No. 275), but prior to the hearing. In response, Zurich filed a brief that is substantively identical to the brief Zurich filed in response to the Growers' Motions. (ECF No. 278.) Accordingly, the Court will treat Langston's Motion as if it was filed along with the Growers' Motions.

*Morningstar Law Group by Shannon R. Joseph, Jeffery L. Roether, and Eric R. Hunt for Counterclaim Defendant Hog Growers.*

*Young Moore and Henderson, P.A. by Walter E. Brock, David W. Earley, Andrew P. Flynt, and Matthew C. Burke for Counterclaim Defendant Grower Insurers.*

*Nexsen Pruet, PLLC by James West Bryan, Brett Becker, and David S. Pokela for Defendant/Counterclaim Plaintiff American Guarantee & Liability Insurance Company.*

McGuire, Judge.

## I.      FACTS AND PROCEDURAL BACKGROUND

1.      The facts and procedural background of the underlying law suit in this matter are recited in this Court's Order and Opinion on Defendants' Motions for Judgment on the Pleadings.  ("Motion for Judgment," ECF No. 269.)  The Court recites herein only those facts necessary to decide the Motions.

2.      Murphy-Brown is in the business of producing and growing hogs on farms owned by Murphy-Brown ("company-owned farms") and on farms owned by the Growers.  Murphy-Brown and the Growers enter into contracts (the "Grower Agreements") to memorialize their business relationships.  ("Counterclaim," ECF No. 99, at ¶ 107.)

3.      Murphy-Brown is a defendant in twenty-six (26) nuisance lawsuits pending in federal court ("Federal Nuisance Actions").  (*Id.* at ¶ 87.)  Twenty-three of the twenty-six Federal Nuisance Actions involve farms owned by Growers (hereinafter, the "Twenty-Three Nuisance Actions").  (*Id.* at ¶ 88.)  The plaintiffs in the Twenty-Three Nuisance Actions allege that "Murphy-Brown is liable based on,

among other things, the following: (1) that Murphy-Brown is in a principal-agent relationship with the [Growers] and thus is vicariously liable for the alleged nuisance caused by the [Growers]; or (2) that Murphy-Brown employed the [Growers] to do work which Murphy-Brown knew or had reason to know would create a nuisance and thus cause harm." (*Id.* at ¶ 89.)

4.     Five trials have been conducted in the Federal Nuisance Actions,[2] resulting in jury verdicts against Murphy-Brown of "$98,402,400, not including any accrued prejudgment or post-judgment interest." (*Id.* at ¶ 90.)

5.     Zurich is one of Murphy-Brown's excess insurers. (*Id.* at ¶ 93.)   Zurich issued four separate polices (the "Zurich Policies") to Murphy-Brown which insure Murphy-Brown for "certain risks during the periods of 2010 to 2014." (*Id.*)   The Zurich Polices contain the following provision, or a provision with substantially the same wording, pertaining to defense coverage:

> SECTION III. DEFENSE AND SUPPLEMENTARY PAYMENTS
>
> A. We have the right and duty to assume control of the investigation and settlement of any claim, or defense of any suit against the insured for damages covered by this policy:
>
> > 1. Under Coverage A, when the applicable limit of underlying insurance and other insurance has been exhausted by payment of claims for which coverage is afforded under this policy; or
> >
> > 2. Under Coverage B, when damages are sought for bodily injury, property damage, or personal and

---

[2] It is unclear from the pleadings, motions, and briefs whether all five of the trials have involved Grower farms that are part of the Twenty-Three Nuisance Actions, or whether some of the trials have involved company-owned farms.

> advertising injury to which no underlying insurance or other insurance applies.

(*Id.* at ¶ 100.)

6. Based on this provision, Zurich alleges that: "[t]o the extent any such 'other insurance' . . . is applicable to the nuisance claims, actions and damages alleged against Murphy-Brown in the Twenty-Three Nuisance Actions, then any alleged coverage under the Zurich Policies, which coverage is denied, is excess to such 'other insurance.'" (*Id.* at ¶ 101.)

7. The Grower Insurers entered into insurance policies (the "Grower Insurer Policies") with the Growers, agreeing "to pay those sums that the [Growers become] legally obligated to pay as damages because of bodily injury or property damage to which the insurance applies." (*Id.* at ¶ 102.) Zurich alleges that the Grower Insurer Policies provide "contractual liability" and apply to liability for damages assumed in an "insured contract." (*Id.* at ¶ 103.) "An 'insured contract' is that part of any contract or agreement pertaining to the insured [Grower's] business under which the insured [Grower] assumes the tort and/or nuisance liability of another party." (*Id.*)

8. The Grower Agreements include a clause (the "Indemnity Agreements") requiring the Growers "to indemnify Murphy-Brown with respect to the [Growers'] acts and omissions in performing under the [Grower Agreements]." (*Id.* at ¶ 108.) For example, some of the Grower Agreements contain the following Indemnity Agreement:

> Indemnification. Producer does hereby agree to hold and save [Murphy-Brown, LLC] harmless from all losses, claims, damages, or expenses, including reasonable attorney fees and court costs, resulting from any act of Producer, Producer's employees, representatives, invitees, guests, and agents, or from any omission of Producer, whether said act or omission was required by any State, Federal or local law, rule, regulation or ordinance or under the terms of this Swine Agreement.

(*Id.* at ¶ 109.)[3]

9. Zurich maintains that each indemnification clause in the Grower Agreements constitutes an "insured contract" under the Grower Insurer Policies and the Grower Insurer Policies constitute "other insurance" as defined in the Zurich Policies. (*Id.* at ¶¶ 105–06.)

10. Accordingly, Zurich alleges that pursuant to the Indemnity Agreements, the Growers "contractually assumed the tort/nuisance liability of Murphy-Brown, which would include the nuisance claims asserted in the Twenty-Three Nuisance Actions"; the Grower Insurer Policies "provide primary insurance coverage to the [Growers] for the contractual liability related to the . . . indemnity agreements"; and the Grower Insurer Policies are a source of defense and indemnity for Murphy-Brown. (*Id.* at ¶¶ 115, 117–18.)

11. On March 7, 2019, Zurich demanded that Murphy-Brown seek enforcement of the Indemnity Agreements against the Growers and Grower Insurers.

---

[3] Zurich acknowledges that there is at least one other form of indemnification clause found in the Grower Agreements and there may well be additional forms of indemnification clauses. (*Id.* at ¶¶ 109–11.)

(*Id.* at ¶ 133.) However, on May 13, 2019, Murphy-Brown refused to enforce the Indemnity Agreements. (*Id.* at ¶ 134.)

12. Plaintiffs initiated the underlying lawsuit on March 5, 2019, by filing a complaint in the Superior Court of Wake County, North Carolina. (Compl., ECF No. 4.) Contemporaneous with the filing of the Complaint, Plaintiffs filed a Notice of Designation to have the case designated as a mandatory complex business case. (Notice of Desig., ECF No. 6.) On March 6, 2019, this action was designated to the North Carolina Business Court (Desig. Order, ECF No. 3), and was assigned to the undersigned on March 7, 2019 (Assign. Order, ECF No. 2).

13. On March 19, 2019, Plaintiffs amended their Complaint. ("Amended Complaint," ECF No. 9.) On May 16, 2019, Zurich filed its Answer to Plaintiffs' Amended Complaint. ("Answer to Amended Complaint," ECF No. 72.) On June 14, 2019, Zurich filed its Counterclaim for Declaratory Judgment by way of Amendment of [Zurich's] Answer to Plaintiffs' Amended Complaint. (ECF No. 99.)

14. Between September 13, 2019 and November 5, 2019, the Grower Insurers filed their Motions to Dismiss (ECF Nos. 231, 243, 258) and all joined in the Grower Insurers' Joint Brief in Support of [their] Motion[s] to Dismiss. ("Grower Insurers' Brief in Support," ECF No. 232.) On October 25, 2019, Zurich filed its Response Brief in Opposition to [the Grower Insurers'] Motions to Dismiss Counterclaim. ("Zurich Response to Grower Insurers," ECF No. 255.) On November 15, 2019, the Grower Insurers filed a Joint Reply Brief in Support of their Motion[s] to Dismiss. ("Grower Insurers' Reply," ECF No. 260.)

15.     Between September 13, 2019 and January 21, 2020, the Growers filed their Motions to Dismiss (ECF Nos. 233, 234, 237, 238, 240, 247, 276) and all joined in the Joint Brief of [Growers] in Support of their Motions to Dismiss ("Growers' Brief in Support," ECF No. 235).  On October 25, 2019, Zurich filed its Response Brief in Opposition to [the Growers'] Motions to Dismiss Counterclaim.  ("Zurich Response to Growers," ECF No. 256.)  On November 15, 2019, the Growers filed a Joint Reply Brief in Support of their Motion[s] to Dismiss.  ("Growers' Reply," ECF No. 259.)

16.     On September 13, 2019, Murphy-Brown filed its Motions to Dismiss (ECF No. 239) and filed a Brief in Support of its Motion to Dismiss [Zurich's Counterclaim] ("Murphy-Brown's Brief in Support," ECF No. 241).  On October 25, 2019, Zurich filed its Response Brief in Opposition to [Murphy-Brown's] Motion to Dismiss Counterclaim.  ("Zurich Response to Murphy-Brown," ECF No. 254.)  On November 15, 2019, Murphy-Brown filed a Reply Brief in Support of its Motion to Dismiss.  ("Murphy-Brown's Reply," ECF No. 261.)

17.     This matter came before the Court for a hearing where the Court heard oral argument from counsel.  The Motions are now ripe for decision.

II.     ANALYSIS

18.     Grower Insurers move to dismiss Zurich's Counterclaim pursuant to North Carolina Rule of Civil Procedure ("Rules") 12(b)(1); Growers move to dismiss

the Counterclaim pursuant to Rules 12(b)(1), 12(b)(6), 13, and 21;[4] and Murphy-Brown moves to dismiss the Counterclaim pursuant to Rules 12(b)(1) and 12(b)(6).

A. *Standard of Review*

     i.   <u>12(b)(1) Standard</u>

19. "Standing concerns the trial court's subject matter jurisdiction and is therefore properly challenged by a Rule 12(b)(1) motion to dismiss." *Fuller v. Easley*, 145 N.C. App. 391, 395, 553 S.E.2d 43, 46 (2001) (citations omitted); s*ee also Aubin v. Susi*, 149 N.C. App. 320, 324, 560 S.E.2d 875, 878 (2002) ("Standing is a necessary prerequisite to a court's proper exercise of subject matter jurisdiction."). "If a party does not have standing to bring a claim, a court has no subject matter jurisdiction to hear the claim." *Estate of Apple v. Commercial Courier Express Inc.*, 168 N.C. App. 175, 177, 607 S.E.2d 14, 16 (2005). "A motion to dismiss for lack of subject matter jurisdiction is not viewed in the same manner as a motion to dismiss for failure to state a claim upon which relief can be granted." *Tart v. Walker*, 38 N.C. App. 500, 502, 248 S.E.2d 736, 737 (1978). A court may consider matters outside the pleadings in determining whether subject matter jurisdiction exists. *Id.*; *see also Keith v. Wallerich*, 201 N.C. App. 550, 554, 687 S.E.2d 299, 302 (2009). "As the party invoking jurisdiction, plaintiffs have the burden of proving the elements of standing." *Neuse River Found. v. Smithfield Foods, Inc.*, 155 N.C. App. 110, 113, 574 S.E.2d 48, 51 (2002).

---

[4] Since the Court decides the Motions exclusively under Rule 12(b)(1), the Court does not address the Growers' arguments for dismissal under Rules 12(b)(6), 13, and 21 or Murphy-Brown's arguments for dismissal under Rule 12(b)(6).

*B. Nature of Zurich's Declaratory Judgment Action*

20. To decide the Counterclaim Defendants' Motions, the Court must first determine the theory under which Zurich seeks declaratory relief.

21. In the Amended Complaint, Murphy-Brown seeks a declaration that Zurich and other insurers are required to reimburse Murphy-Brown for the defense costs associated with, and to indemnify Murphy-Brown for damages arising from, the Federal Nuisance Actions. (*See* ECF No. 9; ECF No. 99, at ¶ 123.) Zurich has denied coverage. (ECF Nos. 72, 99.)

22. Zurich alleges that Murphy-Brown's liability for the jury verdicts in the Twenty-Three Nuisance Actions arises from the Growers' acts or omission which occurred while the Growers were performing under the Grower Agreements. (ECF No. 99, at ¶¶ 125–29.) Accordingly, Zurich believes that, pursuant to the Indemnity Agreements, the Growers owe indemnity to Murphy-Brown with respect to the Twenty-Three Nuisance Actions. (*Id.* at ¶ 130.)

23. Zurich avers that the Growers' indemnity obligations under the Grower Agreements can and should be determined by this Court by conducting a "review of the pleadings, written discovery and/or evidence in the Twenty-Three Nuisance Actions" and conducting a "review of the pleadings in this action." (*Id.* at ¶ 131(a)–(b).) Alternatively, Zurich requests that this "Court determine all issues of fact necessary to adjudicate the legal question of whether the [Growers] owe indemnity to Murphy-Brown with respect to the Twenty-Three Nuisance Actions pursuant to the respective terms of each [Indemnity Agreement]." (*Id.* at ¶ 131(c).)

24. Zurich next contends that the Grower Insurer Policies provide contractual liability coverage for the Growers' obligations under the Indemnity Agreements, "and these liability policies constitute primary coverage in relation to the excess policies of Zurich . . . . Until [the Grower Insurer Policies] are properly and completely exhausted . . . Zurich has no potential liability to Plaintiffs." (*Id*. at ¶ 136.)

25. As a result, Zurich alleges that a priority dispute and uncertainty exists between Zurich and Counterclaim Defendants regarding the allocation of responsibility to indemnify Murphy-Brown for costs associated with the Twenty-Three Nuisance Actions. (*Id*. at ¶¶ 135–38.) In Zurich's view, the dispute creates an actual controversy between Zurich and Counterclaim Defendants regarding: (a) Murphy-Brown's indemnity rights; and (b) the extent of coverage and priority of coverage between Zurich and the Grower Insurers. (*Id*. at ¶ 140.) Zurich asserts that a declaratory judgment is "necessary to guide the parties' future conduct in order to fulfill and/or preserve their respective legal rights and/or obligations relating to the indemnification of Murphy-Brown, if any, with respect to the Twenty-Three Nuisance Actions." (*Id*. at ¶ 141.)

26. Based on the foregoing, Zurich seeks the following declarations from this Court:

  i. From 2010 to the present, the Growers assumed the tort/nuisance liability of and are liable to Murphy-Brown pursuant to the Indemnity Agreements for "Murphy-Brown's defense costs and any other costs

Murphy-Brown pays or is required to pay in the Twenty-Three Nuisance Actions[;]"

ii.   The Grower Insurer Policies apply to and provide coverage for the "nuisance claims, actions and damages alleged against Murphy-Brown in the Twenty-Three Nuisance Actions[;]"

iii.  "[A]ny alleged coverage under the Zurich Policies, which coverage is denied, is excess to such 'other insurance' of the liability insurance policies of the [Grower Insurers;]"

iv.   "[U]ntil the Zurich Payment Conditions are satisfied . . . Zurich has no potential liability to Murphy-Brown."

(*Id.* at ¶¶ 143–44, Prayer for Relief.)

27.   With this understanding of Zurich's Counterclaim, the Court now addresses the merits of Counterclaim Defendants' Motions. The Court will begin by analyzing Zurich's standing to maintain its Declaratory Judgment Action.

*C. Zurich's Standing to Maintain its Declaratory Judgment Action*

28.   Counterclaim Defendants argue that Zurich lacks standing to bring its Declaratory Judgment action because Zurich is not a party to, nor an intended third-party beneficiary of, any of the Grower Agreements or any of the Grower Insurer Policies. (ECF No. 232, at pp. 5–8; ECF No. 235, at pp. 11–14; ECF No. 241, at pp. 3–8.)

**i. Zurich's standing to seek a declaration regarding the indemnity rights and obligations under the Grower Agreements**

29. The Declaratory Judgment Act provides that "Courts of record within their respective jurisdictions shall have power to declare rights, status, and other legal relations, whether or not further relief is or could be claimed." N.C.G.S. § 1-253. Pursuant to N.C.G.S. § 1-254:

> Any person interested under a deed, will, written contract or other writings constituting a contract, or whose rights, status or other legal relations are affected by a . . . contract . . . , may have determined any question of construction or validity arising under the . . . contract, . . . , and obtain a declaration of rights, status, or other legal relations thereunder. A contract may be construed either before or after there has been a breach thereof.

30. The first clause of § 1-254—"any person interested under a deed, will, written contract or other writings constituting a contract"— has been interpreted as only allowing "a party to a contract or a direct beneficiary to have standing under N.C.[G.S.] § 1-254 to file a declaratory judgment action under N.C.[G.S.] § 1-253." *Whittaker v. Furniture Factory Outlet Shops & Auto-Owners Ins. Co.*, 145 N.C. App. 169, 173, 550 S.E.2d 822, 824 (2001).

31. However, under the second clause of § 1-254, "a third party who has 'rights, status or other legal relations [that] are affected by . . . [a] contract'" may have standing to seek a declaration regarding the contract if the party seeking the declaration has "an enforceable contractual right under the [ ] agreement." *Whittaker*, 145 N.C. App. at 174, 550 S.E.2d at 825 (citing *DeMent v. Nationwide Mutual Ins. Co.,* 142 N.C. App. 598, 601, 544 S.E.2d 797, 799 (2001)). In other words,

under either clause of § 1-254, "[a]bsent an enforceable contract right, an action for declaratory relief to *construe or apply a contract* will not lie." *Terrell v. Layers Mut. Liab. Ins. Co.*, 131 N.C. App. 655, 661, 507 S.E.2d 923, 926–27 (1998) (emphasis added).

32.     Zurich does not argue that it is a party or third-party beneficiary to the Grower Agreements; nor does Zurich argue that it has an enforceable contractual right in the Grower Agreements.   Rather, Zurich takes the position that it has standing to pursue a declaration of the Growers' indemnity obligations under the Grower Agreements because Zurich "has a 'cognizable interest' in the Grower Agreements and whether indemnity is owed under them from the Growers to Murphy-Brown."  (ECF No. 256, at p. 12.)  Zurich relies on the North Carolina Court of Appeals' holding in *Coca-Cola Bottling Co. Consol. v. Durham Coca-Cola Bottling Co.,* 141 N.C. App. 569, 541 S.E.2d 157 (2000), to support its position that Zurich has standing to seek a declaration of rights under the Grower Agreements pursuant to a less demanding "cognizable interest" standard, even without having an "enforceable contractual right."  (ECF No. 256, at pp. 9–13.)

33.     The facts and procedural background of *Coca-Cola Bottling* are complicated. *See Coca-Cola Bottling,* 141 N.C. App. at 571–76, 541 S.E.2d at 159–62. In sum, Durham Coca-Cola Bottling Company ("Durham") sought to purchase Reidsville Coca-Cola Bottling Company ("Reidsville"). *Id.* at 571, 541 S.E.2d at 159. On February 26, 1999, Durham made an offer by letter to purchase Reidsville and on March 3, 1999, "the president of Reidsville, responded by signing this letter under

the language 'Accepted and Agreed' and returning it to Durham." *Id.* Thereafter, Durham learned that Coca-Cola Bottling Company Consolidated ("Consolidated") was attempting to purchase Reidsville. *Id.* at 572, 541 S.E.2d at 159–60. In April of 1999, Consolidated filed a complaint naming Durham and Reidsville as defendants and alleging that Reidsville accepted a purchase offer from Consolidated prior to Durham's offer. *Id.* at 572, 541 S.E.2d at 160. Consolidated then purportedly purchased Reidsville in May of 1999, and filed an amended complaint seeking, *inter alia*, "a declaratory judgment as to . . . whether Durham [had] an enforceable contract to purchase Reidsville." *Id.* at 572–73, 541 S.E.2d at 160.

34. Durham argued that Consolidated did not have standing to maintain a declaratory judgment action to determine the validity of Durham's contract with Reidsville because Consolidated was not a party to that contract. *Id.* at 575, 541 S.E.2d at 161. The court then cited the second clause of § 1-254[5] and discussed the Declaratory Judgment Act's purpose and the requirements for establishing jurisdiction in declaratory judgment actions as explained by North Carolina's Supreme Court and other authorities. *Id.* at 575–76, 541 S.E.2d at 162. Ultimately, the court concluded that:

---

[5] The second clause of §1-254 provides that "[a]ny person interested under a . . . written contract . . . or whose rights, status or other legal relations are *affected* by a . . . contract . . . may have determined any question of construction or validity arising under the . . . contract . . . and obtain a declaration of rights, status, or other legal relations thereunder." N.C.G.S. § 1-254 (emphasis added).

> [T]he fact that Consolidated is not expressly a party to the contract at issue does not necessarily preclude it from bringing a declaratory judgment suit. A party who seeks a declaratory judgment as to the *validity of a contract* need only have *some cognizable interest* under the contract. *See Terrell v. Lawyers Mut. Liab. Ins. Co.*, 131 N.C. App. 655, 660, 507 S.E.2d 923, 926 (1998) . . . .
>
> If the alleged contract between Durham and Reidsville is, in fact, enforceable, Consolidated may find that it has also purchased some liability to Durham along with its purported purchase of Reidsville. If Reidsville is at some point found to have breached a contract with Durham, Durham may have a claim to some of the assets which now purportedly belong to Consolidated. Simply put, it appears to us that Consolidated does have a *cognizable interest* under the alleged contract between Durham and Reidsville *as a result of having purportedly purchased Reidsville.* Thus, we do not agree with Durham's contention that Consolidated is precluded from maintaining this declaratory judgment suit simply because Consolidated seeks to determine the *validity of a contract* to which it is not expressly a party.

141 N.C. App. at 576, 541 S.E.2d at 162 (emphasis added).

35. Counterclaim Defendants argue there is no lesser "cognizable interest" standard in North Carolina, that Zurich's characterization of *Coca-Cola Bottling* would swallow the general rule regarding standing to bring a declaratory judgment action, and that no court has applied the cognizable interest standard since *Coca-Cola Bottling* was decided. (ECF No. 259, at pp. 2–5; ECF No. 260, at pp. 1–2; ECF No. 261, at pp. 2–5.)

36. Assuming that there is a lesser "cognizable interest" standard that can confer standing on parties in declaratory judgment actions, the Court is not persuaded that it is applicable to the facts of this case. Before and after *Coca-Cola*

*Bottling,* North Carolina's appellate courts have repeatedly held that "[a]bsent an enforceable contract right, an action for declaratory relief to *construe or apply a contract* will not lie." *Terrell*, 131 N.C. App. at 661, 507 S.E.2d at 926–27 (emphasis added) (a purported assignee under an insurance policy lacked standing to have a trial court construe the policy because it was not assignable and therefore, the "plaintiff [could not be] a person who is or can be 'interested . . . under [the] contract.'"); *DeMent*, 142 N.C. App. at 605, 544 S.E.2d at 802 (holding that a party who sought to have medical expenses paid under another party's insurance policy lacked standing to seek a declaration as to the extent of coverage under said insurance policy because he was neither a party or third-party beneficiary of the policy); *Beachcomber Props., L.L.C. v. Station One, Inc.,* 169 N.C. App. 820, 824, 611 S.E.2d 191, 194 (2005) (potential condominium purchasers, whose purchase contract was terminated, did not have standing to maintain a declaratory judgment action against the condominium's homeowner's association); *Brookline Residential, LLC v. City of Charlotte,* 251 N.C. App. 537, 544–47, 796 S.E.2d 369, 373–76 (2017).

37. Contrary to Zurich's argument, the Court of Appeals' holding in *Coca-Cola Bottling* does not afford Zurich "standing to pursue a declaratory judgment Counterclaim seeking a declaration of the indemnity obligations of the Growers." (ECF No. 256, at p. 13.) The court's holding in *Coca-Cola Bottling* does not supplant North Carolina's long line of authority regarding the requirements for standing to maintain a declaratory judgment action. Rather, in *Coca-Cola Bottling,* under unique circumstances where the moving party claimed to own rights and liabilities that

would be affected by the validity of a contract between two other parties, the court narrowly held that "[a] party who seeks a declaratory judgment as to the *validity of a contract* need only have some *cognizable interest* under the contract." *Coca-Cola Bottling,* 141 N.C. App. at 576, 541 S.E.2d at 162 (emphasis added).

38. Here, Zurich is not seeking a declaration as to the *validity* of the Grower Agreements or the Indemnity Agreements. Instead, in its declaratory judgment action, Zurich seeks to have this Court *constru*e and *apply* the Grower Agreements by declaring that from 2010 to the present, the Growers "assumed the tort/nuisance liability of and are liable to Murphy-Brown under the [Grower Agreements and Indemnity Agreements] with respect to Murphy-Brown's defense costs and with respect to any monetary judgments or settlements Murphy-Brown pays or is required to pay in the Twenty-Three Nuisance Actions." (*See* ECF No. 99, at ¶ 143.) Zurich may, theoretically, have a "cognizable interest" in the Grower and Indemnity Agreements. However, under current North Carolina law, such an interest does not give Zurich standing to maintain a declaratory judgment action to have this Court construe or apply the Grower and Indemnity Agreements.

### ii. Zurich's standing to seek a declaration regarding the priority of insurance between Zurich and the Grower Insurers

39. In its Brief in Opposition to the Grower Insurers' Motions to Dismiss, Zurich advances an alternative ground for standing under N.C.G.S. § 1-257. (ECF No. 255, at pp. 1–10.) Section 1-257 provides trial courts with broad discretion to "refuse to render or enter a declaratory judgment" if entering the judgment "would not terminate the uncertainty or controversy giving rise to the proceeding." N.C.G.S.

§ 1-257. However, "a controversy between insurance companies, . . . with respect to which of two or more of the insurers is liable . . . and the insurers' respective liabilities and obligations, constitutes a justiciable issue and the court *should, . . .* render a declaratory judgment as to the liabilities and obligations of the insurers." *Id.* (emphasis added). Zurich contends that this provision counsels in favor of the Court issuing the requested declarations.

40. Zurich's argument for standing under § 1-257 is summarized as follows:

> Zurich's Counterclaim pertains to "a controversy between insurance companies . . . with respect to which of two or more of the insurers is liable under its particular policy and the insurers' respective liabilities and obligations." [N.C.G.S. § 1-257]. This is a controversy between Zurich and the Grower Insurers. Consequently, under N.C.[G.S.] § 1-257, this Court is *required* to "render a declaratory judgment as to the liabilities and obligations of the insurers." *Id.*

(ECF No. 255, at p. 3.)

41. The Grower Insurers argue that § 1-257 only applies to controversies between insurers who *are* liable and not when two or more insurers *may be* liable. (ECF No. 260, at p. 5.) Additionally, the Grower Insurers contend that § 1-257 "presumes that each policy at issue covers the same loss such that only priority or allocation of coverage is at issue." (*Id.*) Therefore, § 1-257 is inapplicable here because the Zurich Policies and the Grower Insurer Policies insure different losses for different insureds. (*Id.* at p. 6.)

42. Preliminarily, the Court finds it questionable whether this is truly a "controversy between insurance companies" as to which one is liable to Murphy-

Brown. This case simply has not reached that point. As of right now, Zurich has completely denied coverage and no coverage whatsoever has been sought from the Grower Insurers. Moreover, the Court reads § 1-257 as applying to factual scenarios where two or more insurers insure the same party. Indeed, the only North Carolina case cited by Zurich in support of its interpretation of § 1-257, *Smith v. USAA Cas. Ins. Co.*, 819 S.E.2d 610 (N.C. Ct. App. 2018), involved a dispute between two insurers who owed the same type of coverage to the same insured. (ECF No. 255, at pp. 2–5.) The situation here, where Zurich and the Grower Insurers cover different parties and different losses, is inapposite.

43. Finally, even if section 1-257 applies to the factual scenario presented here, the Court, in its discretion, would decline to rule on Zurich's Counterclaim. The Court disagrees with Zurich's claim that the Court is *required* to render a declaratory judgment in this action. Section 1-257 does not contain the strong language, "must" or "shall," typically associated with mandatory standards. *See In re Williamson Vill. Condos.*, 187 N.C. App. 553, 561, 653 S.E.2d 900, 904 (2007); *Thigpen v. Ngo,* 355 N.C. 198, 202, 558 S.E.2d 162, 165 (2002). Rather, the section states that when the section applies, a Court *should* render a declaratory judgment. Under these facts, the Court is not persuaded that it should render a declaratory judgment.

44. Therefore, Counterclaim Defendants' Motions should be GRANTED, and Zurich's Counterclaim should be DISMISSED, without prejudice, for lack of standing.

THEREFORE, it is ORDERED that the Counterclaim Defendants' Motions are GRANTED, and Zurich's Counterclaim is DISMISSED WITHOUT PREJUDICE.

SO ORDERED, this the 18th day of March, 2020.

/s/ Gregory P. McGuire
Gregory P. McGuire
Special Superior Court Judge
for Complex Business Cases